[No. 76527-8.   En Banc.]
Argued February 14, 2006.      Decided October 19, 2006.

SUPERVALU, INC., *Respondent*, v. THE DEPARTMENT OF LABOR
AND INDUSTRIES, *Appellant*.

*Robert M. McKenna, Attorney General, William B. Collins, Senior Assistant,* and *Michael B. King, Assistant,* for appellant.

*Aaron K. Owada* and *Martin D. McLean* (of *Law Offices of Aaron K. Owada and AMS Consulting*), for respondent.

*James M. Thomas* on behalf of Associated General Contractors of Washington, amicus curiae.

*Timothy M. Harris* on behalf of Building Industry Association of Washington, amicus curiae.

¶1 CHAMBERS, J. — We are asked to determine the parameters of Initiative 841 (I-841), an initiative that was passed by the voters in November 2003, concerning ergonomics[1] regulations promulgated by the Washington State Department of Labor and Industries (L&I) in 2000. We hold that by its plain language, I-841 did not eliminate L&I's ability to enforce the "general duty clause" of the Washington Industrial Safety and Health Act of 1973 (WISHA), RCW 49.17.060(1), with respect to serious workplace hazards, even if there is an ergonomic element to them. Accordingly, we vacate the trial court's order quashing L&I's motion to enforce the subpoena and remand this case back to the trial court for proceedings consistent with this opinion.

---

[1] "Ergonomics" is generally defined as "an applied science concerned with the characteristics of people that need to be considered in designing and arranging things that they use in order that people and things will interact most effectively and safely." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 771 (1993).

## BACKGROUND

¶2 In 1970, Congress enacted the Occupational Safety and Health Act (OSH Act), 29 U.S.C. §§ 651-678, which was intended "to assure so far as possible every working man and woman in the Nation safe and healthful working conditions and to preserve our human resources." 29 U.S.C. § 651(b). The Occupational Safety and Health Administration (OSHA) encouraged states to develop their own worker safety plans and submit them to the federal agency for approval. 29 U.S.C. § 667(b). Among other requirements, the state worker safety plans and standards had to be "at least as effective in providing safe and healthful employment and places of employment as the standards promulgated under [the OSH Act] which relate to the same issues." 29 U.S.C. § 667(c)(2).

¶3 In 1973, WISHA was enacted, giving L&I the authority to enforce state safety and health standards to "assure, insofar as may reasonably be possible, safe and healthful working conditions for every man and woman working in the state of Washington." RCW 49.17.010. One of L&I's duties is the enforcement of WISHA. RCW 51.04.010, .020. Under RCW 43.22.050(1), the director of L&I has the authority to "[e]xercise all the powers and perform all the duties prescribed by law" related to industrial safety and health, including the authority necessary for the enforcement of safety and health standards.

¶4 Under WISHA, employers are also required to adhere to certain regulatory obligations. For instance, RCW 49.17.060 imposes two duties on employers, one general and one specific. The statute reads as follows:

Each employer:

(1) Shall furnish to each of his employees a place of employment free from recognized hazards that are causing or likely to cause serious injury or death to his employees: PROVIDED, That no citation or order assessing a penalty shall be issued to any employer solely under the authority of this subsection except where no applicable rule or regulation has been adopted

by the department covering the unsafe or unhealthful condition of employment at the work place; and

(2) Shall comply with the rules, regulations, and orders promulgated under this chapter.

RCW 49.17.060. Subsection (1) of RCW 49.17.060 makes clear that L&I cannot issue a citation or an order assessing a penalty under the general duty clause unless there is no specific rule promulgated under RCW 49.17.060(2).

■ ¶5 Prior to its promulgation of the ergonomics rules, L&I addressed ergonomics-related hazards under the general duty clause. However, believing that the method of addressing those types of injuries was inadequate, L&I promulgated specific ergonomics-related rules. *See* former WAC 296-62-05101 through -05176 (2000), *repealed by* I-841 (enacted as LAWS OF 2004, ch. 1, § 1 (effective Dec. 4, 2003)); Mot. for Discretionary Review at App. F. A major reason L&I felt the general duty clause was inadequate was because of the difficulty of proving a violation under that clause as opposed to merely proving that a specific rule was violated.

¶6 As mentioned above, pursuant to its authority, on May 26, 2000, L&I adopted controversial state ergonomics regulations, former WAC 296-62-05101 through -05176. The regulations were extremely detailed, requiring employers, among other things, to provide ergonomics awareness education and mandating employers to determine what jobs, if any, were within certain "zones" of work and posed potential ergonomics-related hazards. *See id.* These regulations were deemed by business, and ultimately by the people of this state, as unnecessarily burdensome and unreasonable.

## INITIATIVE 841

¶7 In 2003, I-841 was proposed. In its entirety, the initiative read:

BE IT ENACTED BY THE PEOPLE OF THE STATE OF WASHINGTON:

NEW SECTION. **Sec. 1.** A new section is added to chapter 49.17 RCW to read as follows:

Washington must aid businesses in creating new jobs. Governor Locke's competitiveness council has identified repealing the state ergonomics regulations as a top priority for improving the business climate and creating jobs in Washington state. A broad coalition of democrats and republicans have introduced bills repeatedly to bring legislative oversight to this issue. This measure will repeal an expensive, unproven rule. This measure will aid in creating jobs and employing the people of Washington.

NEW SECTION. **Sec. 2.** A new section is added to chapter 49.17 RCW to read as follows:

For the purposes of this section, "state ergonomics regulations" are defined as the rules addressing musculoskeletal disorders, adopted on May 26, 2000, by the director of the department of labor and industries, and codified as WAC 296-62-05101 through 296-62-05176. The state ergonomics regulations, filed on May 26, 2000, by the director and codified as WAC 296-62-05101 through 296-62-05176 are repealed. The director shall not have the authority to adopt any new or amended rules dealing with musculoskeletal disorders, or that deal with the same or similar activities as these rules being repealed, until and to the extent required by congress or the federal occupational safety and health administration.

NEW SECTION. **Sec. 3.** The provisions of this act are to be liberally construed to effectuate the intent, policies, and purposes of this act.

NEW SECTION. **Sec. 4.** If any provision of this act or its application to any person or circumstance is held invalid, the remainder of the act or the application of the provision to other persons or circumstances is not affected.

I-841 (enacted as LAWS OF 2004, ch. 1, § 1), *codified at* RCW 49.17.360, .370.[2]

---

[2] We note that despite our learned colleague in dissent's close textual analysis of the repealed regulations, the dissent never recites the full text of I-841. Again, the critical portion of the initiative reads:

The state ergonomics regulations, filed on May 26, 2000, by the director and codified as WAC 296-62-05101 through 296-62-05176 are repealed. The director shall not have the authority to adopt any new or amended rules dealing with

## FACTS

¶8 SuperValu is an employer that distributes groceries and products to independent grocery stores throughout the northwest. In December 2003, L&I received a complaint from an employee of SuperValu's Tacoma distribution center regarding an alleged injury from stepping on pallets. The complaint read, "Current operation of Product Replenishment creat[es] tripping and ergonomic hazards, placing workers at risk of injury. Workers must access products and carry heavy items over pallets. The number of injuries including back injuries has increased." Clerk's Papers (CP) at 10.

¶9 On December 19, 2003, L&I sent a letter to SuperValu notifying them of the complaint, asking them to determine whether any hazards existed, and requesting a report "describing the results of [SuperValu's] investigation." CP at 77. SuperValu responded to the complaint by letter on January 30, 2004. Subsequently, a WISHA compliance officer conducted an on-site inspection of SuperValu's Tacoma warehouse.[3] Following the on-site inspection, L&I sent an e-mail requesting various materials from SuperValu.[4] In response, SuperValu sent a letter to L&I on March 16, 2004 objecting to its request for additional material. On April 27, 2004, L&I issued a subpoena duces tecum, which required SuperValu to provide "[a]ll written materials concerning SuperValu's current program

musculoskeletal disorders, or that deal with the same or similar activities as these rules being repealed, until and to the extent required by congress or the federal occupational safety and health administration.

I-841, § 2. If the dissent had applied the interpretive rules recited to the operative language of the initiative, it might have reached a different conclusion.

[3] The compliance officer "interviewed witnesses, observed employees engaged in the work activities identified in the Complaint, and took photographs. [She also] asked to see how the pallets were pulled [and] took measurements of the pallets and [the] surrounding areas." CP at 4.

[4] L&I requested, among other things, "Accident Investigation Reports for any claims filed related to stepping on a pallet[,] verbal or written disciplinary action on file for [any] employees who walked on pallets in the last year," and specific information regarding the nature of the job engaged in during the alleged hazard. CP at 84-86.

for and/or administration of the prevention of musculoskeletal disorders, injuries, or illness ([i.e.,] ergonomic program)." CP at 89. Thereafter, discussions occurred between the two parties. However, the discussions did not lead to any resolution. On August 16, 2004, L&I reissued the subpoena duces tecum and set a return date of August 30, 2004. SuperValu filed a complaint for injunctive relief in Pierce County Superior Court.

¶10 The superior court refused to enforce the subpoena. The court concluded that I-841 eliminated L&I's authority to perform safety and health inspections with regard to any ergonomics-related hazards. We granted direct review.

## STANDARD OF REVIEW

¶11 Initiatives will be interpreted from their plain language, if possible. The general rules of statutory construction apply. *Seeber v. Pub. Disclosure Comm'n*, 96 Wn.2d 135, 139, 634 P.2d 303 (1981); *Gibson v. Dep't of Licensing*, 54 Wn. App. 188, 192, 773 P.2d 110 (1989). Where the language "is 'plain, unambiguous, and well understood according to its natural and ordinary sense and meaning, the enactment is not subject to judicial interpretation.' " *Amalgamated Transit Union Local 587 v. State*, 142 Wn.2d 183, 205, 11 P.3d 762, 27 P.3d 608 (2000) (quoting *State v. Thorne*, 129 Wn.2d 736, 762-63, 921 P.2d 514 (1996)). We review questions of law de novo. *In re Pet. of Seattle Popular Monorail Auth.*, 155 Wn.2d 612, ¶33, 121 P.3d 1166 (2005).

## ANALYSIS

¶12 Our role here is to divine the intent of the voters. SuperValu argues the voters' intent was to completely prohibit L&I from performing inspections and issuing citations with regard to *any* musculoskeletal injury related to an ergonomics hazard. SuperValu and amicus curiae Associated General Contractors of Washington correctly state that in determining the meaning of an initia-

tive, the purpose of the court is to ascertain the collective intent of the voters who enacted the measure. *Amalgamated Transit*, 142 Wn.2d at 205. However, again, if the language is plain and unambiguous, the intent is "gleaned" from the language of the measure, and the enactment is not subject to judicial interpretation. *McGowan v. State*, 148 Wn.2d 278, 288, 60 P.3d 67 (2002).

¶13 The question before us is whether the voters intended to repeal only the specific ergonomics regulations promulgated in 2000 or both the regulations and L&I's authority to enforce the general duty clause, RCW 49.17-.060(1), with respect to serious ergonomics-related hazards.[5] To answer this question, we must first look to the plain text of I-841 to see if the voters' intent can be determined. The first portion of the substantive section of I-841 states:

> For the purposes of this section, "state ergonomics regulations" are defined as the rules addressing musculoskeletal disorders, adopted on May 26, 2000, by the director of the department of labor and industries, and codified as WAC 296-62-05101 through 296-62-05176.

The above sentence defines "state ergonomics regulations," the date they were adopted, and where in the WACs they were codified. I-841 continues:

---

[5] In its supplemental briefing, relying primarily on *United States v. Sturm, Ruger & Co.*, 84 F.3d 1 (1st Cir. 1996), L&I argues that it was improper for the superior court to determine this issue in a preliminary proceeding to enforce a subpoena and before L&I had the opportunity to complete its investigation. In addition, L&I contends, largely relying on *Kucera v. Department of Transportation*, 140 Wn.2d 200, 209, 995 P.2d 63 (2000), that the trial court's order granting the preliminary injunction is, on its face, defective because the trial court made no findings with regard to any actual and substantial injury to SuperValu. Under RAP 13.7(b), parties may not introduce new issues after the petition for review is granted. Nevertheless, this court has inherent authority to consider issues not raised by the parties if necessary to reach a proper decision. *See Siegler v. Kuhlman*, 81 Wn.2d 448, 502 P.2d 1181 (1972). However, in this case, we choose not to reach these procedural issues presented by L&I because the substantive issue upon which review was granted is fairly briefed, squarely presented, and subject to repetition below.

The state ergonomics regulations, filed on May 26, 2000, by the director and codified as WAC 296-62-05101 through 296-62--05176 are repealed.

This portion of the initiative repeals the state ergonomics regulations, adopted by the director on May 26, 2000, as stated in the prior sentence—specifically, former WAC 296--62-05101 through -05176. Finally, the last portion of the substantive section of I-841 states:

> The director shall not have the authority to adopt any new or amended rules dealing with musculoskeletal disorders, or that deal with the same or similar activities as these rules being repealed, until and to the extent required by congress or the federal occupational safety and health administration.

This section eliminates the director's power to adopt *any* rules dealing with ergonomics-related disorders or any activities similar to the repealed rules, former WAC 296--62-05101 through -05176.

¶14 This was a plainly drafted initiative. It specifically identifies the precise ergonomics regulations it repeals by including the date the regulation was adopted and referencing the regulations' citation. Further, I-841's language specifically prohibits L&I from adopting any "new or amended" rules dealing with musculoskeletal disorders except as required by Congress. The initiative fails to mention the general duty clause, RCW 49.17.060(1), at all. Seldom have there been initiatives before this court that have been more precise. Before the promulgation of the specific ergonomics regulations in 2000, L&I, like its federal counterpart, utilized the general duty clause to investigate and cite serious ergonomics-related hazards. We find the absence of any reference in I-841 to the general duty clause very significant.

¶15 I-841 could have included language to prohibit complete enforcement of ergonomics-related hazards, subject to federal limitations, but it did not. I-841 could have attempted to prohibit prevention of ergonomics-related injuries under RCW 49.17.060(1), the general duty clause, but it did not. On the contrary, section 1 of the initiative refers

to repealing "unproven" regulations, specifically, the enacted ergonomics regulations promulgated by the director in 2000 and explicitly included in the text of I-841. Again, I-841 never mentions the elimination of L&I's ability to prevent serious ergonomics-related hazards under the general duty clause, RCW 49.17.060(1). Nor can it be argued that anything about the general duty clause is new or unproven. *Id.*

¶16 We conclude based upon the plain text of I-841 that the voters intended to repeal and prohibit only what they said they intended to repeal and prohibit. They repealed specific ergonomics regulations and prohibited L&I from adopting any new or amended ergonomics regulations. By the initiative's plain language, the voters did not intend to eliminate L&I's ability to use its enforcement power to prevent ergonomics-related workplace hazards "that are causing or likely to cause serious injury or death." RCW 49.17.060(1).

¶17 Given the initiative's unambiguity, our conclusion must be based, *and is based,* upon the plain language of the initiative. Our conclusion that the voters did not intend to eliminate L&I's general duty clause authority to investigate and cite for recognized workplace hazards likely to cause serious injury or death to employees merely because the injury was ergonomics-related is supported by what the initiative did accomplish. By eliminating the specific ergonomics regulations in favor of enforcement under the general duty clause, the initiative significantly reduced employers' compliance burden while simultaneously increasing L&I's burden of enforcement.

¶18 As stated previously, the repealed regulations were very detailed, requiring employers to provide ergonomics awareness education, and mandated they determine what jobs posed potential ergonomics-related hazards. *See* former WAC 296-62-05101 through -05176. For instance, the now repealed regulations laid out specific physical risk factors that constituted an ergonomics hazard, requiring employers to identify those risks and the hazards they

present, and then remedy those hazards using criteria set out in the regulations. *Id.* Needless to say, the compliance burden under the repealed regulations on employers was substantial.

¶19 In addition, L&I has a higher burden when proving a violation under the general duty clause than it does when proving a violation of a specific rule. In proving a violation of the general duty clause, L&I "must show the employer failed to render the workplace free of (1) a *hazard,* which (2) was *recognized,* and (3) caused or was *likely to cause* death or serious injury."[6] *Dep't of Labor & Indus. v. Kaiser Aluminum & Chem. Corp.*, 111 Wn. App. 771, 780, 48 P.3d 324 (2002). As part of its burden under the general duty clause, L&I "must specify the particular steps the employer should have taken to avoid the citation [and] must demonstrate the feasibility and likely utility of those measures." *Id.* at 782 (citing *Donovan v. Royal Logging Co.*, 645 F.2d 822, 829 (9th Cir. 1981)). This is the same burden that OSH Act's general duty clause requires. *See* 29 U.S.C. § 654(a).

¶20 In contrast, to prove a violation of a specific health and safety standard, L&I need only prove " '(1) the cited standard applies; (2) the requirements of the standard were not met; (3) employees were exposed to, or had access to, the violative condition; [and] (4) the employer knew or, through the exercise of reasonable diligence, could have known of the violative condition.' " *Wash. Cedar & Supply Co. v. Dep't of Labor & Indus.*, 119 Wn. App. 906, 914, 83 P.3d 1012 (2004) (quoting *D.A. Collins Constr. Co. v. Sec'y of Labor*, 117 F.3d 691, 694 (2d Cir. 1997)).[7]

---

[6] RCW 49.17.180(6) defines a serious violation "in [the] work place if there is a substantial probability that death or serious physical harm could result from a condition which exists, or from one or more practices, means, methods, operations, or processes which have been adopted or are in use in such work place, unless the employer did not, and could not with the exercise of reasonable diligence, know of the presence of the violation."

[7] If a citation involves a "serious" violation, L&I must also prove that there is a substantial probability that death or serious physical harm could result from the violative condition. RCW 49.17.180(6).

¶21 Further, state and federal courts have delineated other major differences between enforcement under the general duty clause and enforcement under a specific, promulgated rule.[8] First, if the violation concerns a specific standard, it is not necessary to *even* prove that a hazard exists, just that the specific standard was violated. *Lee Way Motor Freight, Inc. v. Sec'y of Labor*, 511 F.2d 864, 869 (10th Cir. 1975). In stark contrast, under the general duty clause, L&I must *prove* the existence of a recognized hazard that caused or was likely to cause serious injury or death. *Kaiser Aluminum*, 111 Wn. App. at 780. Second, if a specific standard exists, the standard is presumed feasible and the burden is on the *employer* to prove that it is not. *Modern Cont'l/Obayashi v. Occupational Safety & Health Review Comm'n*, 196 F.3d 274, 282 (1st Cir. 1999). However, with an enforcement action under the general duty clause, *L&I has the burden* of proving that there is a feasible means of abating the cited hazard. *Kaiser Aluminum*, 111 Wn. App. at 782.

¶22 Simply stated, there are clear evidentiary differences between an enforcement action brought under the general duty clause, as opposed to an action brought under a specific, promulgated rule. These differences account for the increased difficulty L&I has in proving a violation under the general duty clause as opposed to proving that a specific, promulgated rule was violated.

¶23 Lastly, per federal law, WISHA cannot provide less protection than the OSH Act. 29 U.S.C. § 667(c)(2). As already mentioned, we have often looked to WISHA's federal counterpart for guidance. *Rios v. Dep't of Labor & Indus.*, 145 Wn.2d 483, 497, 39 P.3d 961 (2002). Before 2000, when OSHA promulgated its own specific ergonomics regulations, OSHA inspected and cited employers pursuant

---

[8] The OSH Act general duty and specific duty clauses are very similar to those contained in RCW 49.17.060. *See* 29 U.S.C. § 654. This court has stated that "we may find guidance in federal cases interpreting the mirror image [OSH Act] provisions, although plainly we are not bound by such cases." *Rios v. Dep't of Labor & Indus.*, 145 Wn.2d 483, 497, 39 P.3d 961 (2002).

to its version of our general duty clause, 29 U.S.C. § 654.[9] *See generally* Ergonomics Program, 65 Fed. Reg. 68,262 (Nov. 14, 2000). In 2001, when Congress repealed the specific ergonomics regulations promulgated by OSHA, OSHA returned to using its general duty clause to investigate alleged serious, recognized, ergonomics-related workplace hazards. *See* U.S. Dep't of Labor, Occupational Safety and Health Administration, Ergonomics: Enforcement (Dec. 27, 2004), http://www.osha.gov/SLTC/ergonomics/enforcement.html. OSHA's return to its general duty clause for its enforcement authority of ergonomics hazards was known before Washington voters cast their votes for I-841. After the passage of I-841, L&I, like OSHA, now must return to addressing ergonomics hazards under our general duty clause, RCW 49.17.060(1).

¶24 We hold the passage of I-841 did nothing to eliminate L&I's general authority under RCW 49.17.060(1).

## CONCLUSION

¶25 The trial court quashed the motion to enforce the subpoena based upon its understanding that L&I did not have enforcement authority under the general duty clause to cite an employer for serious ergonomics-related hazards. However, the language of I-841 is plain and unambiguous. Nothing in I-841 suggests that L&I is stripped of its general regulatory authority to address serious or deadly ergonomics-related workplace hazards by way of RCW 49.17.060(1). Accordingly, we vacate the trial court's order quashing L&I's motion to enforce the subpoena dated October 15, 2004, and remand this case back to the trial court for proceedings consistent with this opinion.

ALEXANDER, C.J.; C. JOHNSON, MADSEN, BRIDGE, OWENS, and FAIRHURST, JJ.; and QUINN-BRINTNALL, J. PRO TEM., concur.

---

[9] The relevant portion of 29 U.S.C. § 654(a)(1) states, "[each employer] shall furnish to each of his employees employment and a place of employment which are free from recognized hazards that are causing or likely to cause death or serious physical harm to his employees."

¶26 SANDERS, J. (dissenting) — In 2003 Washington voters enacted Initiative 841 (I-841), repealing the "expensive, unproven" state ergonomics regulations promulgated by the Department of Labor and Industries (L&I) three years prior. LAWS OF 2004, ch. 1, § 1 (effective Dec. 4, 2003). The majority undermines I-841 by permitting L&I to enforce the rejected ergonomics standards through the Washington Industrial Safety and Health Act of 1973's (WISHA) general duty clause, which mandates employers maintain workplaces free of "recognized hazards that are causing or likely to cause serious injury or death." RCW 49.17.060(1). Because L&I lacks the authority to implement as "recognized" ergonomics standards voters deemed "unproven," I would uphold the trial court's order. Accordingly, I dissent.

¶27 The ergonomics regulations promulgated by L&I in 2000 focused on reducing "work-related musculoskeletal disorders."[10] The regulations covered all employers with "caution zone jobs,"[11] or jobs including specific physical risk factors defined in the rules, requiring such employers to identify and reduce any potential ergonomics hazards and to provide ergonomics awareness education for their employees.[12] To "aid in creating jobs and employing the people of Washington," I-841 repealed this "expensive, unproven rule." LAWS OF 2004, ch. 1, § 1. I-841 also removed L&I's authority "to adopt any . . . rules dealing with musculoskeletal disorders, or that deal with the same or similar activities as these rules being repealed, until and to the extent required by congress or the federal occupational safety and health administration." Id. § 2. The initiative's provisions "are to be liberally construed to effectuate [its] intent, policies, and purposes." Id. § 3.

¶28 "In approving initiative measures, the people exercise the same power of sovereignty as the Legislature when

---

[10] Former WAC 296-62-05103 (2000), *repealed by* I-841, LAWS OF 2004, ch. 1, § 1 (effective Dec. 4, 2003) (*repealed by* I-841); RCW 49.17.360-.370.

[11] Former WAC 296-62-05103 (2000), *repealed by* I-841; RCW 49.17.360-.370.

[12] Former WAC 296-62-05120, -05130 (2000), *repealed by* I-841; RCW 49.17-.360-370.

it enacts a statute." *Wash. Fed'n of State Employees v. State*, 127 Wn.2d 544, 556, 901 P.2d 1028 (1995). When analyzing a statute enacted through an initiative, our purpose "is to ascertain the collective intent of the voters." *Amalgamated Transit Union Local 587 v. State*, 142 Wn.2d 183, 205, 11 P.3d 762, 27 P.3d 608 (2001). We determine voter intent from the language of the initiative "as the average informed voter voting on the initiative would read it." *Id.* "Where the language of an initiative enactment is 'plain, unambiguous, and well understood according to its natural and ordinary sense and meaning, the enactment is not subject to judicial interpretation.' " *Id.* (quoting *State v. Thorne*, 129 Wn.2d 736, 762-63, 921 P.2d 514 (1996)). Questions of law are reviewed de novo. *Berrocal v. Fernandez*, 155 Wn.2d 585, 590, 121 P.3d 82 (2005).

¶29 L&I argues I-841 did not eliminate its power to investigate and enforce "recognized" ergonomics hazards "causing or likely to cause serious injury or death" under the general duty clause of RCW 49.17.060(1). SuperValu contends the trial court correctly concluded I-841 removed L&I's authority to regulate ergonomics hazards.

¶30 The general duty clause requires employers to furnish workplaces free from "recognized hazards that are causing or likely to cause serious injury or death." RCW 49.17.060(1). Underlying L&I's general duty clause argument is the assumption ergonomics hazards can be considered "recognized" and "causing or likely to cause serious injury or death." *Id.* L&I's own repealed rules failed to identify any ergonomics hazards, instead requiring employers to analyze several risk factors to determine whether their intensity, frequency, or duration constituted a hazard.[13] In fact, the very definition of ergonomics appears to be an open question. While the repealed rules defined ergonomics as "[t]he science and practice of designing jobs or workplaces to match the capabilities and limitations of

---

[13] Former WAC 296-62-05130, *repealed by* I-841; RCW 49.17.360-.370.

the human body,"[14] L&I now asserts ergonomics includes psychological "hazards" as well, defining it as "the study of the design of requirements of work in relation to the physical and psychological capabilities and limitations of people."[15] Most importantly, however, the assumption ergonomics hazards can properly be considered as "recognized" is inconsistent with the plain and unambiguous language of I-841, which repudiated the ergonomics regulations as "unproven."

¶31 In an attempt to sidestep this determination, the majority asserts it cannot "be argued that anything about the general duty clause is new or unproven." Majority at 432. This statement is both true and beside the point. The voters determined it was ergonomics, and not the general duty clause, that was "unproven." The voters' judgment is not nullified merely because L&I must meet a higher burden of proof in establishing a violation under RCW 49.17.060(1). While I-841 does not specifically mention the general duty clause, the fact it deemed ergonomics "unproven" removes L&I's authority to investigate and enforce it as a "recognized" hazard.

¶32 Initiatives are to be construed liberally "and a hypertechnical construction which deprives them of effect is to be avoided." *Maleng v. King County Corr. Guild*, 150 Wn.2d 325, 334, 76 P.3d 727 (2003). In order to improve the business climate and create jobs in Washington, I-841 repealed the "expensive, unproven" state ergonomics regulations and removed L&I's authority to "adopt any . . . rules dealing with musculoskeletal disorders, or that deal with the same or similar activities as [the repealed rules]."[16] Yet according to the majority, "the average informed voter voting on the initiative," *Amalgamated*, 142 Wn.2d at 205, intended nothing more than to place a higher evidentiary burden on L&I in enforcing these rules. *See* majority at

---

[14] Former WAC 296-62-05150, *repealed by* I-841; RCW 49.17.360-.370.

[15] L&I Mot. for Discretionary Review at 2 n.1 (citations omitted).

[16] LAWS OF 2004, ch. 1, § 2.

432-35. This interpretation renders I-841 effectively useless. L&I has already directed its staff to use "[t]he repealed rule and its components . . . as a guide to identifying potential hazards and areas of concern" in consultations with employers.[17] And in this case, without alleging the existence of any ergonomics hazards, L&I has subpoenaed all materials related to SuperValu's "program for the reduction and prevention of musculoskeletal disorders, injuries, and illnesses, and all written materials related in any way to [its] administration."[18] This subpoena constitutes an attempt at enforcing the repealed rules, and it was properly quashed by the trial court.

¶33 The Occupational Safety and Health Act (OSHA) does not compel a different result. It requires any state occupational safety plan, such as WISHA, to provide for the enforcement of standards "at least as effective in providing safe and healthful employment and places of employment as *the standards* promulgated under [OSHA] which relate to the same issues." 29 U.S.C. § 667(c)(2) (emphasis added). Although the Occupational Safety and Health Administration issued industry-specific ergonomics guidelines after Congress rescinded the federal ergonomics rules, these are voluntary and failure to implement them "is not itself a violation of the General Duty Clause of the OSH Act."[19] Neither L&I nor the majority cites any ergonomics standards promulgated under OSHA which would require WISHA to authorize L&I enforcement of alleged ergonomics hazards under its general duty clause. The trial court's interpretation of I-841 is not preempted by federal law.

¶34 Washington voters repealed state ergonomics regulations and removed L&I's authority to adopt any rules relating to musculoskeletal injuries in the future, conclud-

---

[17] WISHA REG'L DIRECTIVE 10.05, at 2 (Dec. 4, 2003) (on file with L&I Div. of Occupational Safety & Health); Clerk's Papers (CP) at 52.

[18] CP at 40.

[19] U.S. Dep't of Labor, Occupational Safety and Health Administration, Ergonomics: FAQs, http://www.osha.gov/SLTC/ergonomics/faqs.html (last visited Oct. 17, 2006).

ing such rules were "unproven." L&I's assertion of authority to regulate ergonomics hazards under the general duty clause must fail because no hazard can be both "recognized" and "unproven" at the same time. By sanctioning the indirect enforcement of the repealed rules under a different, albeit more stringent, evidentiary standard, the majority undermines the "collective intent of the voters." *Amalgamated*, 142 Wn.2d at 205. The trial court correctly concluded I-841 removed L&I's authority to enforce alleged ergonomics hazards, and I would uphold its order quashing L&I's subpoena.

¶35 I dissent.

[No. 77398-0.  En Banc.]
Argued May 16, 2006.    Decided October 19, 2006.