[No. 61569-6-I.   Division One.   June 1, 2009.]

EXPRESS CONSTRUCTION COMPANY, *Appellant*, v. THE DEPARTMENT OF LABOR AND INDUSTRIES, *Respondent*.

590

*Aaron K. Owada* (of *AMS Law, PC*), for appellant.

*Robert M. McKenna, Attorney General*, and *Brian L. Dew* and *Michael K. Hall, Assistants*, for respondent.

¶1 APPELWICK, J. — Express appeals the trial court's decision affirming the decision and order of the Board of Industrial Insurance Appeals, which fined Express for a serious trenching violation. Express contends that the Department of Labor and Industries did not present a prima facie case of a serious violation. Because the Board's findings reflect substantial evidence of a serious violation, we affirm.

## FACTS

¶2 Express Construction Company was the general contractor for a construction project on Ballinger Way Northeast in Shoreline, Washington. Charley's Backhoe, Inc., a subcontractor, provided excavation services.

¶3 On September 23, 2003,[1] Express's superintendent, Jeff Oleson, observed Charley's Backhoe violate the Washington Industrial Safety and Health Act of 1973 (WISHA), chapter 49.17 RCW, excavation safety regulations when one of its employees entered a trench that was not protected against cave-in by a trench box. Although Express verbally warned Charley's about the safety violation, Express failed to follow its safety policy; specifically, it neglected to provide

---

[1] The trial court's order affirming the Board of Industrial Insurance Appeals (Board) noted that there was evidence that the date was September 24, but the error is not material. Here, we will use the date that is consistent with the Board's decision.

Charley's Backhoe with a written notification of the safety violation.[2]

¶4 On September 25, 2003, Jason Miller, owner of Charley's, was operating the excavator in the unprotected trench. Oleson had not warned Miller about the unprotected trench other than a statement to keep everything safe.[3] The unprotected trench was visible from Express's work trailer, but Oleson could not see the trench from his position inside the trailer at the time of the accident. Zenito Ocampo, an employee of Charley's, entered the trench to begin working. Shortly thereafter, he climbed up the ladder and out of the trench, at which point the trench failed, causing Ocampo to fall off the ladder and back into the trench, where he was engulfed by dirt from the abdomen down. Although Miller had rented a trench box, which was on site, the trench box was not in the trench at the time of the accident, as required by WAC 296-155-657(1)(a). Ocampo died as a result of the trench cave-in.

¶5 Nick Stilnovich, a compliance officer for the Department of Labor and Industries (Department), conducted an investigation on February 24, 2004, after the fatality. The Department cited Express for a serious violation of WAC 296-155-657(1)(a), based on its subcontractor's trenching violations, and WAC 296-155-100(1)(a), based on its failure to follow its own safety program for supervising subcontractors. The Department proposed a penalty of $2,250 for one serious violation of WAC 296-155-100(1)(a), for failure to establish, supervise, and enforce a safe and healthful working environment.[4]

¶6 Express filed an appeal with the Department's Division of Safety on March 23, 2004. The appeal was transmit-

---

[2] It is not clear from the record whether the safety policy required Express to immediately issue a written notification or whether it could wait a day or two, but it had not been issued before the accident occurred.

[3] The Board had to make a credibility determination regarding whether Oleson warned Miller again about the trench box just before the accident. Based on extrinsic evidence of Express's noncompliance with its own policies, the Board determined that Oleson had not warned Miller.

[4] This penalty encompassed the trenching violation.

ted to the Board and was noted on the Board's docket on April 15, 2004.

¶7 An industrial appeals judge (IAJ) conducted a hearing and issued a proposed decision and order finding that Express did not discover or control recognized hazards on the site. The IAJ concluded that Express had violated WAC 296-155-100(1)(a) and affirmed the citation.

¶8 Express sought review by the three-member Board. The Board denied the petition for review, rendering the IAJ's proposed decision and order the final order pursuant to RCW 51.52.106. Express appealed the final order to King County Superior Court, which remanded the case to the Board to allow Express to present additional evidence about its safety procedures.

¶9 The IAJ heard additional evidence and issued a new proposed decision and order, concluding that the additional evidence did not affect the findings of fact and conclusions of law in the original proposed decision and order, but did affect the calculation of the penalty, which was adjusted to $1,350. Express once again sought review by the three-member Board. The Board denied the petition for review, making the second proposed decision and order the final order of the Board.

¶10 Express appealed to King County Superior Court again. The court found that substantial evidence supported the Board's findings and affirmed the Board's final order. Express timely appealed the trial court's order affirming the Board's final order.

DISCUSSION

I. The Board's Findings of Fact

¶11 This court reviews a decision by the Board directly, based on the record before the agency. *Legacy Roofing, Inc. v. Dep't of Labor & Indus.*, 129 Wn. App. 356, 363, 119 P.3d 366 (2005).

¶12 We review findings of fact to determine whether they are supported by substantial evidence. *Mid Mountain*

*Contractors, Inc. v. Dep't of Labor & Indus.*, 136 Wn. App. 1, 4, 146 P.3d 1212 (2006). The findings of fact are conclusive if supported by substantial evidence when viewed in light of the record as a whole. *Id.*; RCW 49.17.150(1); RCW 34.05-.570(3)(e). "Substantial evidence" is evidence in sufficient quantum to persuade a fair-minded person of the truth of the declared premise. *J.E. Dunn Nw., Inc. v. Dep't of Labor & Indus.*, 139 Wn. App. 35, 42-43, 156 P.3d 250 (2007).

██ ██ ¶13 The Board found that Express had failed to discover or control recognized hazards on the site based on Express's failure to follow its own safety program. The second finding of fact in the proposed decision and order states:

> On September 25, 2003, Express Construction Company and its on-site superintendent, Jeff Oleson, did not discover or control recognized hazards on the site. Express Construction Company did not discipline Charley's Backhoe, Inc., for a safety violation that occurred on September 23, 2003, in the manner required by the general contractor's safety program; failed to ensure Charley's Backhoe, Inc., was conducting relevant safety meetings on a regular basis; and failed to ensure Charley's Backhoe, Inc., submitted minutes of those meetings to the general contractor.

¶14 Express does not assign error to any of the Board's findings of fact or conclusions of law, so they become verities on appeal. *Moreman v. Butcher*, 126 Wn.2d 36, 39, 891 P.2d 725 (1995); *Mid Mountain*, 136 Wn. App. at 4; RAP 10.3(g).

## II. Prima Facie Requirements of a Serious WISHA Violation

██ ██ ¶15 A general contractor at a construction site has a duty to comply with WISHA regulations in its oversight of all employees, not just its own employees. *Stute v. P.B.M.C., Inc.*, 114 Wn.2d 454, 457, 788 P.2d 545 (1990). The general contractor's duty under *Stute* extends only to specific

WISHA provisions, not general WISHA provisions.[5] *Id.*; *J.E. Dunn*, 139 Wn. App. at 48. A specific WISHA provision is one that is encompassed by the specific duty clause of RCW 49.17.060(2), which states that an employer must " 'comply with the rules, regulations, and orders promulgated under [WISHA].' " *J.E. Dunn*, 139 Wn. App. at 48 (alteration in original).

¶16 The Department cited Express for a serious violation of WAC 296-155-100(1), a specific WISHA regulation providing that management must

> establish, supervise, and enforce, in a manner which is effective in practice:
>
> (a) A safe and healthful working environment.

A "serious" violation exists if

> there is a substantial probability that death or serious physical harm could result from a condition which exists, or from one or more practices, means, methods, operations, or processes which have been adopted or are in use in such work place, unless the employer did not, and could not with the exercise of reasonable diligence, know of the presence of the violation.

RCW 49.17.180(6).

¶17 The Department bears the initial burden to prove a violation. WAC 263-12-115(2)(b). Accordingly, to establish its prima facie case of a serious violation of a WISHA regulation, in this instance WAC 296-155-100(1), the Department had to prove each of the following elements: (1) the cited standard applies; (2) the requirements of the standard were not met; (3) employees were exposed to, or had access to, the violative condition; (4) the employer knew or, through the exercise of reasonable diligence, could have

---

[5] The general duty clause of RCW 49.17.060(1) provides that an employer "[s]hall furnish to each of his employees a place of employment free from recognized hazards that are causing or likely to cause serious injury or death to his employees: PROVIDED, That no citation or order assessing a penalty shall be issued to any employer solely under the authority of this subsection except where no applicable rule or regulation has been adopted by the department covering the unsafe or unhealthful condition of employment at the work place."

known of the violative condition; and (5) there is a substantial probability that death or serious physical harm could result from the violative condition. *SuperValu, Inc. v. Dep't of Labor & Indus.*, 158 Wn.2d 422, 433, 144 P.3d 1160 (2006); *J.E. Dunn*, 139 Wn. App. at 44-45.

¶18 In *J.E. Dunn*, this court clarified the Department's prima facie burden for a WAC 296-155-100(1) citation involving a general contractor's oversight of a subcontractor's employees. 139 Wn. App. at 49-50. Rejecting the Board's conclusion that the burden of showing compliance with the WISHA regulation was to be borne by the general contractor, the court explained that the Department had only to show that the requirements of the WISHA regulation were not met. *Id.* Here, as in *J.E. Dunn*, where the specific regulation at issue was WAC 296-155-100(1), the Department had to show that the requirement—to establish, supervise, and enforce, in a manner which is effective in practice, a safe and healthful working environment—was not met.[6]

¶19 Neither party disputes that WAC 296-155-100(1) applies, but they dispute its requirements. Express contends that the Board erroneously concluded that the Department presented a prima facie case of the WISHA violation. Specifically, Express argues that the Department did not present prima facie evidence either of a specific regulation that Express violated by failing to follow internal safety policy or of actual knowledge of the violation.

¶20 The Department cited Express for a violation of WAC 296-155-100(1),[7] which requires management to ensure a safe working environment and to establish and supervise an accident prevention program. Express failed

---

[6] The Department demonstrated this by showing both the underlying trenching violation pursuant to WAC 296-155-657(1)(a) and the violation of the general contractor's duty to maintain a safe workplace pursuant to WAC 296-155-100(1)(a).

[7] The citation specified that Express violated WAC 296-155-100(1)(a), but the Board made findings that Express violated both WAC 296-155-100(1)(a) and (b). WAC 296-155-100(1)(b) requires management to have and follow a safety plan as required under other WISHA regulations.

to discipline Charley's Backhoe for its trenching violations in the manner consistent with Express's own accident prevention program.

¶21 The unchallenged finding of the Board is that on September 23, 2003, Express failed to discipline Charley's for a trenching safety violation that its superintendent witnessed on that same day, and that Express failed to ensure Charley's was conducting required safety meetings. The Department presented prima facie evidence that Express violated WAC 296-155-100(1).

¶22 Express next argues that the Department, as part of its prima facie case, was required to show that Express had actual knowledge of the violation. The Department argues that actual knowledge is not a required element of the prima facie case under *J.E. Dunn*, 139 Wn. App. at 44-45.

¶23 The unchallenged findings of the Board are that Express knew, or could have known, of the violation because its superintendent, Oleson, observed Charley's employees in an unprotected trench on September 23 and directed Charley's to get the appropriate shoring for the trench. Additionally, there is no requirement that the general contractor have actual knowledge of the violation—showing that the general contractor could have known of the violative condition through the exercise of reasonable diligence is sufficient.[8] *SuperValu*, 158 Wn.2d at 433.

¶24 Express does not dispute that the Department presented the remaining prima facie evidence of a violation. The Department had to show that the employees were exposed to, or had access to, the violative condition and that there was a substantial probability that death or serious physical harm could result. *J.E. Dunn*, 139 Wn. App. at 44-45.

---

[8] Express cites to various federal cases in an attempt to argue that Express was not in violation of WISHA, because an employer is not required to detect or become aware of every hazard. We need not address these cases, because Washington law provides controlling precedent.

¶25 The unchallenged findings of the Board are that Ocampo was exposed to the safety violation (here, the trenching violation). Ocampo died as a result of the failure to place the trench box in the trench on September 25, satisfying the requirement that death or serious physical harm could result.

¶26 The Department met its prima facie burden of demonstrating a serious violation of WAC 296-155-100(1).

## III. The Board's Conclusions of Law

¶27 Express argues that even had the Department met its prima facie burden, it failed to meet its ultimate burden, because Express exercised due diligence, so the Board's legal conclusion is erroneous.

¶28 We review the Board's conclusions of law to ensure that they follow logically from the findings of fact. *BD Roofing, Inc. v. Dep't of Labor & Indus.*, 139 Wn. App. 98, 106, 161 P.3d 387 (2007). The Board concluded:

On September 25, 2003, Express Construction Company violated the provisions of WAC 296-155-100(1)(a). Express Construction Company did not fulfill its primary responsibility as a general contractor for compliance with safety regulations on its job site within the meaning of *Stute v. P.B.M.C., Inc.*, 114 Wn.2d 454, 788 P.2d 545 (1990).

WAC 296-155-100(1) states that

[i]t shall be the responsibility of management to establish, supervise, and enforce, in a manner which is effective in practice:

(a) A safe and healthful working environment.

¶29 The Board's uncontested finding is that Express did not discipline Charley's in the manner required by Express's safety program and that Express did not control hazards that resulted in Ocampo's death.

¶30 The Board's legal conclusion that Express had violated WAC 296-155-100(1) logically follows from this finding.

¶31 We affirm.

ELLINGTON and LAU, JJ., concur.