# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

IMCO GENERAL CONSTRUCTION, INC.,

        Appellant,

v.

DEPARTMENT OF LABOR AND INDUSTRIES OF THE STATE OF WASHINGTON,

        Respondent.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

No. 76301-6-I

DIVISION ONE

UNPUBLISHED

FILED: <u>January 22, 2018</u>

COX, J. — Washington Industrial Safety and Health Act (WISHA) safety standards require that employers protect their employees working at the edge of pits deeper than 10 feet by use of adequate protection systems. In citing an employer for a serious violation of these standards, the Department of Labor and Industries has the burden to show that the employer's employees were exposed to or had access to the unprotected pit's edge. Because the record in this case shows that the Department met that burden, we affirm.

IMCO contracted to build a water treatment plant in Lynden, Washington. The project required IMCO to excavate a 25 foot deep construction pit. The pit was ringed with a rope railing but no guardrail compliant with Department regulations. It is undisputed that IMCO carpenter Tom Reardon constructed two

staircases for ingress and egress to the pit. And while he was doing so, other employees installed a pump hose around the pit's edge to prevent water accumulation.

In response to an anonymous complaint, the Department investigator Keith Koskela visited this jobsite to conduct a WISHA compliance inspection. He interviewed employees, tested the strength of the rope at the pit's edge, and took photographs of the site. As a result of Koskela's visit, the Department cited IMCO for inadequately protecting its employees from the hazard of falling into the pit.

IMCO appealed to the Board of Industrial Insurance Appeals (BIIA), arguing that the Department failed to prove that IMCO had exposed its employees to the hazard of falling into the pit. A BIIA administrative hearing judge affirmed the citation after reviewing evidence and hearing witness testimony. And the BIIA adopted the judge's proposed decision and order after denying IMCO's petition for administrative review. IMCO appealed to superior court, which affirmed the BIIA's decision.

IMCO appeals.

## EXPOSURE TO FALLING HAZARD

IMCO argues that insufficient evidence supports the Board's finding that IMCO exposed its employees to the hazard of falling into a 25 foot deep pit on its work site. We hold that substantial evidence supports the challenged findings.

WISHA governs our review.[1] That statute requires that we review the Board's decision, based on the record before the agency.[2] The Board's findings of fact are conclusive if supported by substantial evidence when viewed in light of the whole record.[3] Evidence is substantial if sufficient to "persuade a reasonable person of the truth of the premise."[4] We review whether the BIIA's findings support its conclusions.[5]

"We view the evidence and reasonable inferences in the light most favorable to the prevailing party — here, the Department."[6] Circumstantial evidence can be as reliable as direct evidence, and a fact finder may make reasonable inferences on the basis of circumstantial evidence.[7] The specific element at issue in this case, "[e]xposure to a hazard may be established by circumstantial evidence."[8]

---

[1] RCW 49.17.150.

[2] J.E. Dunn Nw., Inc. v. Dep't of Labor & Indus., 139 Wn. App. 35, 42, 156 P.3d 250 (2007).

[3] Mid Mountain Contractors, Inc. v. Dep't of Labor & Indus., 136 Wn. App. 1, 4, 146 P.3d 1212 (2006).

[4] Id.

[5] Id.

[6] Frank Coluccio Constr. Co. v. Dep't of Labor & Indus., 181 Wn. App. 25, 35, 329 P.3d 91 (2014).

[7] Faust v. Albertson, 167 Wn.2d 531, 538, 222 P.3d 1208 (2009).

[8] Sec'y of Labor v. Marine Power and Equip. Co., 6 O.S.H. Cas. (BNA) 1427, at 5 (1978).

We interpret WISHA statutes and regulations "liberally to achieve their purpose of providing safe working conditions for workers in Washington."[9] And we give substantial weight to the Department's interpretation of these statutes and regulations.[10]

An employer commits a serious WISHA violation:

> if there is a substantial probability that death or serious physical harm could result from a condition which exists, or from one or more practices, means, methods, operations, or processes which have been adopted or are in use in such workplace, unless the employer did not, and could not with the exercise of reasonable diligence, know of the presence of the violation.[11]

The court previously held that the Department makes out a prima facie case for a "serious violation" when it proves:

> (1) the cited standard applies; (2) the requirements of the standard were not met; (3) employees were exposed to, or had access to, the violative condition; (4) the employer knew or, through the exercise of reasonable diligence, could have known of the violative condition; and (5) there is a substantial probability that death or serious physical harm could result from the violative condition.[12]

IMCO does not challenge the Board's findings on elements 1, 2, 4, or 5. Those findings are thus verities on appeal.[13] Rather, IMCO only argues that

---

[9] Frank Coluccio Constr. Co., 181 Wn. App. at 36.

[10] Id.

[11] RCW 49.17.180(6).

[12] Express Constr. Co. v. Dep't of Labor & Indus., 151 Wn. App. 589, 597-98, 215 P.3d 951 (2009).

[13] Mid Mountain Contractors, Inc., 136 Wn. App. at 4.

substantial evidence fails to support element 3 that IMCO's employees were exposed to or had access to the falling hazard.

The Department demonstrates that employees were exposed to or had access to the violative conditions by showing the "*reasonable predictability* that, in the course of [the workers'] duties, employees will be, are, or have been in the zone of danger.'"[14] Thus, the supreme court has held that a worker is neither exposed to nor has access to a violative condition when he must "consciously and deliberately remove[]" a protective barrier to reach the violative condition.[15]

IMCO contends that the Board's findings were insufficient because they showed only that "the alleged violative condition was close by" because "operational process did not require any employees to be exposed to a fall hazard."[16] But precedent shows that these findings were sufficient.

Mid Mountain Contractors, Inc. v. Washington State Department of Labor and Industries[17] controls our analysis. In that case, the Department had cited Mid Mountain Contractors for violating WAC 296-155-657(1)(a).[18] That

---

[14] Id. at 5 (quoting Adkins v. Aluminum Co. of America, 110 Wn.2d 128, 147, 750 P.2d 1257, 756 P.2d 142 (1988)).

[15] Adkins, 110 Wn.2d at 148.

[16] Amended Opening Brief of Appellant IMCO General Construction, Inc. at 9, 14-15.

[17] 136 Wn. App. 1, 146 P.3d 1212 (2006).

[18] Id. at 3.

regulation required employers to provide systems to protect their excavation workers from cave-ins.[19] Mid Mountain Contractors appealed.[20]

In resolving that appeal, we discussed the testimony of a general laborer at the site named Vern McCollaum.[21] McCollaum was present the day the citation issued, and had access to the hazard and the relevant zone of danger.[22] We took note that "[a]lthough McCollaum was not actually within the zone of danger, he was working within close proximity, and it is reasonably likely that he could have walked the short distance and been within the zone of danger."[23] Despite McCollaum's work taking place outside the zone of danger, we emphasized that "[t]here was nothing to prevent entering the zone during the conduct of his normal duties."[24] On this basis we affirmed the finding of exposure, and concluded that Mid Mountain violated WAC 296-155-657(1)(a).[25]

Here, the Department cited IMCO for seriously violating WAC 296-155-24611(1)(d). That regulations requires that employers "ensure that the appropriate fall protection system is provided, installed, and implemented according to the requirements in this part when employees are exposed to fall

---

[19] Id.

[20] Id. at 4.

[21] Id. at 7.

[22] Id.

[23] Id.

[24] Id.

[25] Id. at 8.

hazards of 10 feet or more to the ground or lower level, while . . . [e]ngaged in excavation and trenching operations." The regulation also requires "[f]all protection . . . for employees standing in or working in the affected area of a trench or excavation exposed to a fall hazard of 10 feet or more."[26]

IMCO does not contend that the rope surrounding the pit was adequate to satisfy this regulation, a fact we take as a verity on appeal.[27]

The BIIA found that:

> [a]s of August 14, 2014, employees of IMCO General Construction, Inc. were exposed to or had access to the hazard posed by the lack of an adequate fall protection system at the perimeter of the pit, including workers who installed and used the access stairs, installed braces in the pit, and/or worked in the pit on the auger-cast pilings. Not all of these employees were directly engaged in excavation work at the site.[28]

The BIIA identified numerous facts adduced in its proceeding that support this finding. It explained that exposure could be proven by circumstantial evidence. It pointed to Reardon's testimony that he had constructed two staircases for workers to obtain access to the pit. Employees using those stairs, or "gather[ing] at the top of the stairs to observe the construction activity below" as some did, were necessarily exposed to the fall hazard by their proximity to the edge of the pit. Reardon had further testified that he witnessed employees place the pump hoses at the perimeter of the pit while he was constructing the stairs. The BIIA made a reasonable inference that the construction of the stairs required

---

[26] WAC 296-155-24611(1)(d)(ii).

[27] Mid Mountain Contractors, Inc., 136 Wn. App. at 4.

[28] Clerk's Papers at 59.

the pit already be excavated and, accordingly, the employees installing the hoses had access to the edge of the pit. The BIIA identified as circumstantial evidence footprints by the pit's edge and a safety jacket hanging on a railing post at the edge of the pit. And the BIIA found that employees engaged in capping the auger-cast pilings would have had to work on the bottom of the pit without protection.

This evidence, viewed in the light most favorable to the Department, was sufficient to support the BIIA's finding that IMCO employees were exposed to or had access to the violative condition. Persuasive federal precedent holds that the presence of employee equipment and materials at the unguarded pit's edge provides sufficient circumstantial evidence to show exposure.[29]

This conforms to Mid Mountain Contractors, Inc. That case stands for the proposition that employees are exposed to or have access to a violative condition when, although they work outside the zone of danger, it is reasonably likely that employees *could* have obtained access and were not barred from doing so. The evidence in this case satisfies that standard.

IMCO makes several arguments why the Department's showing of exposure was insufficient. None are persuasive.

First, IMCO argues that Koskela never saw the pump hose being installed and thus could not testify whether the employees installing it were exposed or had access to the falling hazard. Reardon testified that he saw employees

---

[29] Marine Power and Equip. Co., 6 O.S.H. Cas. (BNA) 1427, at 5.

installing the pump hose at the pit's edge subsequent to excavation. This was circumstantial evidence of exposure of the employees to the unsafe condition. No more was required.

Second, IMCO argues that the rope railing had been installed before excavation. Assuming it had, this would be irrelevant. Even if the employees installing the railing did their job prior to excavation, other employees had subsequently been exposed or had access to the unguarded pit. And the time of the rope's installation does not cure its inadequacy as a protection system.

Third, IMCO argues that employees on the stairs were not exposed because a protected walkway led to the stairs. This does not bear upon exposure of those employees once *on* the stairs, as demonstrated by Reardon's testimony.

Fourth, IMCO argues that the evidence fails to show that employees were assigned to work at the pit's edge or had to pass directly thereby to perform their work. This argument ignores the standard just discussed, and is thus unpersuasive.

Fifth, IMCO suggests that the employees installing the pump hose were involved in the excavation and thus would be exempt from the relevant protections. Not so.

IMCO is correct that employees "[d]irectly involved with the excavation process and on the ground at the top edge of the excavation" are not entitled to

the fall protection requirements at issue.[30] But under WAC 296-155-650(2), an excavation is "formed by earth removal."

Here, the BIIA found that "the piping activity was not simply a part of the initial excavation, but was also necessary on an ongoing basis to insure [sic] that water was removed from the already excavated pit."[31] The employees involved in placing a pump hose to prevent water accumulation were not involved in removing earth and, accordingly, were not *directly* involved with the excavation process.

Sixth, IMCO argues that the Department failed to prove that employees were exposed to or had access to the pit because it failed to show that IMCO did not provide alternative safety mechanisms, namely a harnessing system. This argument does not alter our conclusion.

IMCO raised this argument originally in petitioning for administrative review before the BIIA. Yet in adopting the proposed decision in this matter, the BIIA declined to make the requested finding that the Department failed to show the absence of a harnessing system. When the lower tribunal does not make a written finding, we interpret that absence as adverse to the finding's proponent.[32] Accordingly, we conclude that this argument is without merit.

---

[30] WAC 296-155-24611(1)(d)(i)(A).

[31] Clerk's Papers at 57.

[32] Ellerman v. Centerpoint Prepress, Inc., 143 Wn.2d 514, 524, 22 P.3d 795 (2001).

Seventh, IMCO argues that this court should adopt a standard that the Occupational Safety Health Review Commission (OSHRC) has applied in determining exposure. We decline to do so.

IMCO correctly notes that, given the similarity between WISHA and its federal counterpart, the Occupational Safety and Health Act (OSHA), courts may turn for persuasive guidance to federal OSHA cases.[33] IMCO cites two cases, which it contends are persuasive here.

In the first, Secretary of Labor v. Rockwell International Corporation, Rockwell International Corporation argued that certain machines at its plant did not violate a machine guarding standard.[34] The Secretary of Labor argued that an employee operating the machines was exposed to injury because, while standing by the machine, he could hypothetically place his hands beneath a dangerous descending component.[35]

The OSHRC explained that the standard only applied "when the point of operation exposes an employee to injury."[36] It noted that "[w]hether the point of operation exposes an employee to injury must be determined based on the manner in which the machine functions and how it is operated by the

---

[33] Asplundh Tree Expert Co. v. Dep't of Labor & Indus., 145 Wn. App. 52, 60, 185 P.3d 646 (2008).

[34] 9 O.S.H. Cas. (BNA) 1092 (1980).

[35] Id. at 6.

[36] Id.

employees."[37] The method of the relevant machine's operation did not involve the employee placing his hands in dangerous proximity to the descending component.[38] The OSHRC reasoned that the Secretary of Labor's argument required impermissible speculation without evidence.[39]

The second case, Secretary of Labor v. RGM Construction Company, concerned a violative condition similar to that in this case.[40] The Secretary of Labor had cited RGM Construction Company for, among other violations, exposing employees to the unguarded edge of an open-sided floor or platform on part of a bridge.[41]

The OSHRC explained that it was the Secretary's burden to prove exposure by:

> showing that, during the course of their assigned working duties, their personal comfort activities on the job, or their normal ingress-egress to and from their assigned workplaces, employees have been in a zone of danger or that it is reasonably predictable that they will be in a zone of danger. . . The zone of danger is determined by the hazard presented by the violative condition, and is normally that area surrounding the violative condition that presents the danger to employees which the standard is intended to prevent.[42]

---

[37] Id.

[38] Id.

[39] Id.

[40] 17 O.S.H. Cas. (BNA) 1229 (1995).

[41] Id. at 4.

[42] Id. at 5.

The OSHRC went on to conclude that the Secretary had failed to prove exposure where the surface in question was wide enough to provide "ample room to walk along the bridge surface without being in danger of falling off the edge."[43] Without evidence that employees had walked or engaged in other dangerous conduct by the edge, exposure was not shown.[44]

These cases are unpersuasive for two reasons. First, we will not take persuasive guidance from the OSHRC when there is contrary Washington precedent that controls. As we held in Mid Mountain Contractors, Inc., the Department meets its burden if it shows that an employee "was working within close proximity, and it is reasonably likely that he could have walked the short distance and been within the zone of danger."[45] The key inquiry under Washington law is whether anything "prevent[ed the employee from] entering the zone during the conduct of his normal duties."[46] We have already analyzed the application of this rule to this case.

Furthermore, the OSHRC standard would not change our conclusion. Unlike in Rockwell International Corporation, there was no speculation here, given the circumstantial evidence we already discussed. And unlike in RGM Construction Company, that evidence demonstrated that employees were within the zone of danger. As Reardon testified, employees had to lay the pump hose

---

[43] Id. at 6.

[44] Id.

[45] 136 Wn. App. at 7.

[46] Id.

after the pit had been excavated. Employees also had to use the staircase and stood around its top unguarded. Thus, they were within the zone of danger. Under both <u>Rockwell International Corporation</u> and <u>RGM Construction Company</u>, exposure was proven.

In its reply brief, IMCO raises additional arguments concerning the identity of the employees who left the footprints. We decline to reach these as untimely.[47]

We affirm the superior court's judgment and order.

_Cox, J._

WE CONCUR:

_Trickey, ACJ_

_Schindler, J_

---

[47] <u>Deutsche Bank Nat. Trust. Co. v. Slotke</u>, 192 Wn. App. 166, 177, 367 P.3d 600, <u>review denied</u>, 185 Wn.2d 1037 (2016).