[No. 56301-7-I.   Division One.   April 16, 2007.]

J.E. DUNN NORTHWEST, INC., *Appellant*, v. THE DEPARTMENT OF LABOR AND INDUSTRIES, *Respondent*.

38

*Aaron K. Owada* (of *Law Offices of Aaron Owada and AMS Consulting*), for appellant.

*Robert M. McKenna, Attorney General,* and *Bourtai Hargrove, Assistant,* for respondent.

¶1 DWYER, J. — General contractor J.E. Dunn Northwest, Inc., supervised the construction of the Olympus Towers, a high-rise apartment complex in Seattle. The Department of Labor and Industries (Department) cited J.E. Dunn for several alleged violations of safety provisions of the Washington Administrative Code (WAC) enacted pursuant to the Washington Industrial Safety and Health Act of 1973 (WISHA), chapter 49.17 RCW, in J.E. Dunn's oversight of its own employees and employees of subcontractors working on the Olympus Towers jobsite. The Board of Industrial Insurance Appeals (BIIA) upheld seven of the alleged violations. J.E. Dunn herein contests four of them.

¶2 We hold that the BIIA erred by placing on J.E. Dunn the burden of disproving an element of two of the alleged violations that were issued with regard to J.E. Dunn's oversight of employees of subcontractors. Accordingly, we reverse the BIIA's decision with respect to the two corresponding violations. We affirm the BIIA's decision with respect to the remaining two violations.

FACTS

Underlying Dispute

¶3 J.E. Dunn is a general contractor construction company. During 2001, J.E. Dunn supervised the construction

of the Olympus Towers, a high-rise apartment complex in Seattle. Both J.E. Dunn employees and employees of several subcontractors worked on that construction.

¶4 In July 2001, an employee of one of the subcontractors fell to her death down an unguarded ventilation shaft. The incident prompted a safety inspection by the Department. As a result of that inspection, the Department issued a citation and notice of assessment enumerating several violations of WAC safety regulations by J.E. Dunn in its oversight of both its own employees and employees of subcontractors working on the jobsite.

¶5 J.E. Dunn herein contests four of the violations enumerated: item 4b and item 5, which allege violations of safety regulations solely in J.E. Dunn's oversight of its own employees; and item 2 and item 3a, which allege violations of safety regulations in J.E. Dunn's oversight of employees of subcontractors. All four violations qualified as serious violations of the Department's safety regulations.

*1. Oversight of J.E. Dunn Employees*

¶6 Item 4b and item 5 were issued for alleged violations of WISHA safety regulations solely regarding J.E. Dunn's oversight of its own employees.

¶7 Item 4b was issued pursuant to WAC 296-155-24510, which requires employers to ensure that employees exposed to fall hazards of more than 10 feet have a fall protection system in place. Item 4b provides, in relevant part:

> The employer failed to ensure the two employees exposed to a fall, down a shaft, of about 30 feet had a fall protection system in place.[1]

---

[1] Two employees of J.E. Dunn testified at the hearing before the BIIA that they removed the cover from a 30-foot ventilation shaft and worked around and above the ventilation shaft without wearing fall protection equipment. An employee of a subcontractor later fell to her death down that unguarded ventilation shaft.

¶8 Item 5 was issued pursuant to former WAC 296-155--483(7)(c) (2000),[2] which required an employer to protect employees who are working on scaffolding that is more than 10 feet above a lower level from falling. Item 5 provides, in relevant part:

> The employer did not ensure that an employee on swing stage scaffolding was using proper fall protection. The fall protection was not in compliance with WAC 296-155--24510(2)(a)(v) in that his harness system was not rigged to minimize free fall distance to not more than 6 feet.[3]

### 2. Oversight of Subcontractor Employees

¶9 Item 2 and item 3a were issued for alleged violations of WISHA safety regulations regarding J.E. Dunn's oversight of employees of subcontractors.

¶10 Both items allege violation of WAC 296-155-100(1), which provides:

> It shall be the responsibility of management to establish, supervise, and enforce, in a manner which is effective in practice:
>
> (a) A safe and healthful working environment.
>
> (b) An accident prevention program as required by these standards.

Item 2 provides:

> The general contractor did not establish, supervise, and enforce, in a manner, which was effective in practice, a safe and healthful environment in the following instances.
>
> . . . .
>
> 1. Two employees of subcontractor Henson Company, Inc. were exposed to a fall of about 30 feet without fall protection. Employees for JE Dunn created the hazard itself.

---

[2] *Repealed by* WSR (Washington State Register) 05-01-054, effective March 1, 2005 ("The scaffolds rule has been rewritten and reorganized for clarity and ease of use.").

[3] The department officer who conducted the safety inspection of the Olympus Towers site testified that he observed an employee of J.E. Dunn exposed to a fall of approximately 12 to 15 feet through improper use of fall protection equipment while working on scaffolding.

> 2. One employee of Window Installation Specialists, Inc. was exposed to a fall of about 32 feet without fall protection.[4]

Item 3a provides:

> Management failed to enforce their site-specific Accident Prevention Program.

## Procedural History

¶11 J.E. Dunn appealed the citation to the BIIA. After a hearing, the BIIA upheld the four alleged violations herein addressed.

¶12 In reviewing the safety violation in J.E. Dunn's oversight of employees of subcontractors, the BIIA placed on J.E. Dunn the burden of proving that it had complied with WAC 296-155-100(1) by establishing, supervising, and enforcing a safe and healthy work environment and accident prevention program that were effective in practice. The BIIA concluded that J.E. Dunn failed to satisfy that burden and affirmed item 2 and item 3a.

¶13 J.E. Dunn appealed to the King County Superior Court, which affirmed the BIIA's decision. This appeal followed.

## DISCUSSION

¶14 We review a decision by the BIIA directly, based on the record before the agency. *Legacy Roofing, Inc. v. Dep't of Labor & Indus.*, 129 Wn. App. 356, 363, 119 P.3d 366 (2005). We review findings of fact to determine whether they are supported by substantial evidence and, if so, whether the findings support the conclusions of law. *Inland*

---

[4] An employee of J.E. Dunn testified that two employees of subcontractor Henson Masonry constructed a cement block wall around two sides of the unguarded 30-foot ventilation shaft without wearing fall protection equipment. The department officer who conducted the safety inspection at the Olympus Towers site testified that he observed an employee of subcontractor Window Installation Specialists climb a ladder above a guard rail several times without using fall protection equipment.

*Foundry Co. v. Dep't of Labor & Indus.*, 106 Wn. App. 333, 340, 24 P.3d 424 (2001). The BIIA's findings of fact are conclusive if supported by substantial evidence when viewed in light of the record as a whole. RCW 49.17.150(1); RCW 34.05.570(3)(e); *Mid Mountain Contractors, Inc. v. Dep't of Labor & Indus.*, 136 Wn. App. 1, 4, 146 P.3d 1212 (2006). Substantial evidence is evidence "in sufficient quantum to persuade a fair-minded person of the truth of the declared premise." *Holland v. Boeing Co.*, 90 Wn.2d 384, 390-91, 583 P.2d 621 (1978).

¶15 We review issues of law, including matters of statutory construction, de novo. *Wash. Cedar & Supply Co. v. Dep't of Labor & Indus.*, 119 Wn. App. 906, 912, 83 P.3d 1012 (2004) (*Wash. Cedar* I).

## 1. Oversight of J.E. Dunn Employees

¶16 J.E. Dunn first contends that the BIIA erred by determining that the Department met its burden of establishing its prima facie case in regard to item 4b and item 5 for the violations of WISHA regulations in J.E. Dunn's oversight of its own employees. J.E. Dunn further contends that the BIIA erred by determining that J.E. Dunn failed to establish that those violations were due to unpreventable employee misconduct, an affirmative defense to WISHA regulation violations. Both contentions fail.

### A. Department's Prima Facie Case

¶17 The WAC provisions pursuant to which J.E. Dunn was cited were promulgated under the authority of WISHA. The purpose of WISHA is to "assure, insofar as may reasonably be possible, safe and healthful working conditions for every man and woman working in the state of Washington." RCW 49.17.010.

¶18 The duties of employers under WISHA are enumerated in RCW 49.17.060, which contains both a general duty clause and a specific duty clause. The general duty clause obligates employers to "furnish to each of his employees a place of employment free from recognized hazards that

are causing or likely to cause serious injury or death to his employees." RCW 49.17.060(1). The specific duty clause obligates employers to "comply with the rules, regulations, and orders promulgated under [WISHA]." RCW 49.17.060(2).

¶19 The Department is charged with the authority to promulgate regulations under WISHA and to impose citations and penalties against employers for violating such regulations. RCW 49.17.050, .120, .180. When alleging a violation of WISHA regulations against an employer, the Department bears the initial burden of proving the existence of that violation. WAC 263-12-115(2)(b); *SuperValu, Inc. v. Dep't of Labor & Indus.,* 158 Wn.2d 422, 433, 144 P.3d 1160 (2006); *Wash. Cedar* I, 119 Wn. App. at 914.

¶20 RCW 49.17.180(2) mandates the assessment of a penalty against an employer when a proven violation is "serious." A "serious" violation of a WISHA regulation is defined as follows:

> [A] *serious violation shall be deemed to exist in a work place if there is a substantial probability that death or serious physical harm could result* from a condition which exists, or from one or more practices, means, methods, operations, or processes which have been adopted or are in use in such work place, *unless the employer did not, and could not with the exercise of reasonable diligence, know of the presence of the violation.*

RCW 49.17.180(6) (emphasis added). When alleging a "serious" violation of a WISHA regulation, the Department bears the burden of proving both the existence of the elements of the violation itself and the existence of those additional elements of a "serious" violation enumerated in RCW 49.17.180(6). *SuperValu, Inc.,* 158 Wn.2d at 433 n.7; *Wash. Cedar* I, 119 Wn. App. at 914.

¶21 Accordingly, to establish its prima facie case in regard to a serious violation of a WISHA regulation, the Department must prove each of the following elements:

> "(1) the cited standard applies; (2) the requirements of the standard were not met; (3) employees were exposed to, or had

access to, the violative condition; (4) the employer knew or, through the exercise of reasonable diligence, could have known of the violative condition; and (5) there is a substantial probability that death or serious physical harm could result from the violative condition."

*Wash. Cedar I,* 119 Wn. App. at 914 (internal quotation marks omitted) (quoting *D.A. Collins Constr. Co. v. Sec'y of Labor,* 117 F.3d 691, 694 (2d Cir. 1997)).

¶22 Here, the BIIA found that the Department met its burden of establishing the existence of the serious violations cited as item 4b and item 5.[5] That finding is supported by substantial evidence.[6]

¶23 J.E. Dunn contends that the BIIA erred by so finding, arguing that the Department failed to prove an element of its prima facie case: that J.E. Dunn knew, or through the exercise of reasonable diligence could have known, of the existence of the violations. We disagree.

¶24 Evidence of an employer's knowledge of "similar past violations" is sufficient to support a finding that the employer, with the exercise of reasonable diligence, would

---

[5] Item 4b, issued pursuant to WAC 296-155-24510, alleges that J.E. Dunn failed to ensure that two employees exposed to a 30-foot fall down a shaft had a fall protection system in place. The BIIA found:

> On July 5, 2001, David Franco and Jeremy Logsdon, carpenters employed by J.E. Dunn, uncovered a ventilation shaft exposing an opening to a depth of 32 feet. When removing the cover, Mr. Franco stood on top of the wooden cover and was working over the area of the shaft. Mr. Logsdon did not stand on the cover, but worked alongside the exposed ventilation shaft. At the time that they performed this work, neither worker was using fall protection.

Finding of Fact (FF) 5. Item 5, issued pursuant to former WAC 296-155-483(7)(c), alleges that J.E. Dunn failed to ensure that an employee on swing-stage scaffolding was using proper fall protection. The BIIA found:

> On August 17, 2001, Dan K. O'Shea, a cement mason employed by J.E. Dunn, was working on a swing-stage scaffold at a height in excess of 10 feet, and, although he was wearing a safety harness and lanyard and was attached to a lifeline, the lifeline had an excess amount of slack, exposing Mr. O'Shea to a fall of approximately 15 feet.

FF 8.

[6] The two employees involved in the violation alleged as item 4b testified as to that violation. The department officer who conducted the safety inspection of the Olympus Towers site testified as to the violation cited as item 5.

have known of the existence of a violation. *Wash. Cedar* I, 119 Wn. App. at 916. The record herein reveals that J.E. Dunn knew of similar past fall protection violations involving workers on the Olympus Towers construction site.

¶25 A few months before the incidents at issue here, a WISHA consultation officer sent J.E. Dunn a letter indicating several WISHA fall hazard regulation violations observed on the Olympus Towers site. Furthermore, J.E. Dunn's safety manager issued a number of safety notices to workers on the site, also regarding violations of WISHA fall hazard regulations, in the months leading up to the cited incidents.

¶26 Thus, substantial evidence supports a determination that J.E. Dunn should have known, with the exercise of reasonable diligence, of the violations alleged in item 4b and item 5. In turn, that determination supports the BIIA's conclusion that those violations were established by the Department.

### B. Unpreventable Employee Misconduct

¶27 Once the Department has established its prima facie case regarding a violation of a WISHA regulation by an employer in its oversight of its own employees, the burden shifts to the employer, who can avoid a finding against it if it can establish that "unpreventable employee misconduct" was the actual cause of the violation. RCW 49.17.120(5)(a); *Wash. Cedar & Supply Co. v. Dep't of Labor & Indus.*, 137 Wn. App. 592, 154 P.3d 287 (2007) (*Wash. Cedar* II); *Legacy Roofing*, 129 Wn. App. at 362-63; *Wash. Cedar* I, 119 Wn. App. at 912. RCW 49.17.120(5)(a) sets out the elements of this affirmative defense:

> No citation may be issued under this section if there is unpreventable employee misconduct that led to the violation, but *the employer must show the existence of*:
>
> (i) A thorough safety program, including work rules, training, and equipment designed to prevent the violation;
>
> (ii) Adequate communication of these rules to employees;

(iii) Steps to discover and correct violations of the safety rules; and

(iv) Effective enforcement of its safety program as written in practice and not just in theory.[7]

¶28 Here, the BIIA found that J.E. Dunn failed to produce evidence sufficient to establish that it maintained a thorough safety program or that the safety program was effectively enforced.[8] Those findings are supported by substantial evidence in the record.[9] In turn, those findings support the BIIA's conclusion that J.E. Dunn did not meet its burden of proving that unpreventable employee misconduct was the actual cause of the two violations.

¶29 We affirm the BIIA's decision upholding item 4b and item 5.

### 2. Oversight of Employees of Subcontractors

¶30 J.E. Dunn next contends that the BIIA erred by finding that the Department met its burden of establishing its prima facie case regarding item 2 and item 3a, for the alleged violations regarding J.E. Dunn's oversight of employees of subcontractors. In particular, J.E. Dunn argues that the BIIA erred by placing on J.E. Dunn the burden of disproving an element of those alleged violations. We agree.

---

[7] (Emphasis added.)

[8] As the BIIA found:

[J.E. Dunn's] training program . . . was not very comprehensive consisting of relying upon employees to read a couple of memos and the content of those memos was not disclosed. The company did impose a 100 percent tie-off rule and cited individuals who violated the rule. However, there was no evidence describing any type of discipline, such as loss of pay, and no evidence that any employee was ever terminated.

Decision and Order at 33.

[9] As the BIIA indicates, there is no evidence in the record that employees of J.E. Dunn were terminated or otherwise disciplined for safety violations. The safety documents J.E. Dunn employees were purportedly required to review as part of J.E. Dunn's safety orientation are also absent from the record. Additionally, a J.E. Dunn employee testified that J.E. Dunn merely paid "lip service" to safety and that the company had never disciplined him for known fall protection violations.

## A. Duties of General Contractors Pursuant to WISHA

¶31 In *Stute v. P.B.M.C., Inc.*, 114 Wn.2d 454, 788 P.2d 545 (1990), our Supreme Court held that the general contractor at a construction site has a duty to comply with WISHA regulations in regard to its oversight of all employees on the site, not just its own employees. *See also Adkins v. Aluminum Co. of Am.*, 110 Wn.2d 128, 153, 750 P.2d 1257 (1988); *Goucher v. J.R. Simplot Co.*, 104 Wn.2d 662, 671-72, 709 P.2d 774 (1985).

¶32 In so holding, however, the *Stute* court expressly limited the duties of general contractors to those arising from the specific duty clause of RCW 49.17.060, which states that an employer must "comply with the rules, regulations, and orders promulgated under [WISHA]." RCW 49.17.060(2). Thus, "[t]he employer's duty only extends to employees of independent [sub]contractors when a party asserts that the employer did not follow particular WISHA regulations." *Stute*, 114 Wn.2d at 457 (citing *Adkins*, 110 Wn.2d at 153). Thus, the court in *Stute* did not extend the duties of general contractors to those arising from general provisions of WISHA itself. Neither has the Supreme Court or this court done so in any other case. Accordingly, we decline to so extend the duties of general contractors here.

¶33 RCW 49.17.120(5)(a), the statute creating the affirmative defense of "unpreventable employee misconduct," is a general provision of WISHA, not a regulation promulgated pursuant thereto. Accordingly, we will not interpret it here to give rise to duties of general contractors in regard to oversight of employees of subcontractors.

¶34 In order to clarify the Department's approach to general contractor responsibilities under WISHA regulations in light of the *Stute* decision, the Department issued a document entitled "WISHA Regional Directive [(WRD)] 27.00" (2001). This document states that the Department recognizes an affirmative defense of WISHA regulation violations applicable to general contractors in regard to over-

sight of employees of subcontractors. That affirmative defense is modeled after the unpreventable employee misconduct affirmative defense established in RCW 49.17.120(5)(a).

¶35 WRD 27.00 further states that, before the Department will recognize such an affirmative defense, the general contractor must show that it has "effectively enforced in practice its Accident Prevention Program and/or Safety Plan." WRD 27.00, at 7. Accordingly, when the affirmative defense is invoked by a general contractor in regard to employees of subcontractors, WRD 27.00 purports to place the burden of proof on the general contractor to show effective enforcement of its safety program, just as RCW 49.17.120(5)(a) places that burden on employers in regard to their own employees. RCW 49.17.120(5)(a)(iv).

*B. Burden of Proof Regarding Elements of WAC 296-155- -100(1) Violation*

¶36 As herein discussed, the allegations of safety violations in J.E. Dunn's oversight of employees of subcontractors, item 2 and item 3a, were issued pursuant to WAC 296-155-100(1), which provides:

It shall be the responsibility of management to establish, supervise, and enforce, in a manner which is effective in practice:

(a) A safe and healthful working environment.

(b) An accident prevention program as required by these standards.

Item 2 alleges that J.E. Dunn failed to comply with WAC 296-155-100(1)(a) by failing to establish, supervise, and enforce, in a manner which is effective in practice, a safe and healthful working environment. Item 3a alleges that J.E. Dunn failed to comply with WAC 296-155-100(1)(b) by failing to enforce its accident prevention program.

¶37 In reviewing item 2 and item 3a, the BIIA determined that, in light of RCW 49.17.120(5)(a) and WRD 27.00, J.E. Dunn should bear the burden of proving its

compliance with WAC 296-155-100(1) by showing both the establishment, supervision, and enforcement of a safe and healthful working environment which is effective in practice, pursuant to item 2, and the enforcement of an accident prevention program, pursuant to item 3a.[10] In so doing, the BIIA relieved the Department of its burden of establishing J.E. Dunn's noncompliance with those provisions. The Department contends that the BIIA was correct in so doing. We disagree.

¶38 As an elemental proposition, the Department bears the initial burden of proving the existence of an alleged violation of WISHA regulations. WAC 263-12-115(2)(b); *SuperValu, Inc.*, 158 Wn.2d at 433; *Wash. Cedar I*, 119 Wn. App. at 914. Thus, the Department bears the burden of proving, as an element of such an alleged violation, that the requirements of the regulation were not met. The establishment, supervision, and enforcement of a safe and healthful working environment that is effective in practice, and the enforcement of an accident prevention program, are requirements of WAC 296-155-100(1). Accordingly, a showing that such requirements are not met is an element of the violations alleged against J.E. Dunn pursuant to item 2 and item 3a, the burden of proving which must be borne by the Department.

---

[10] The BIIA reasoned:

> The requirements of the WRD are not unlike the codification of the unpreventable employee misconduct defense, RCW 49.17.120(5)(a). However, that provision clearly places the burden on the employer to present evidence of the effectiveness of its safety program to the Department. The purpose of WISHA is to ensure a safe and healthful work environment and the general contractor is in the best position to ensure this by developing a safety plan that insures compliance with safety regulations. The prime responsibility for safety of all workers rests with the general contractor. Stute[, 114 Wn.2d] at 464. The WRD is a response to the Stute decision and is intended to allow the general contractor to avoid liability for misconduct by subcontractor employees but only where the general contractor has met its responsibility and taken steps to ensure the safety of workers at the jobsite. Therefore, it is reasonable to place the burden of proving the adequacy of a safety program on the general contractor who is in a better position to present evidence regarding the adequacy of its safety program.

Decision and Order at 14-15.

¶39 Despite the Department's assertions to the contrary, neither RCW 49.17.120(5)(a) nor WRD 27.00 shifts that burden of proof from the Department to J.E. Dunn.

¶40 Initially, the Department contends that it is reasonable to place the burden of proving the effectiveness of a safety program on a general contractor in regard to employees of subcontractors, arguing that such a burden is placed on an employer with regard to its own employees by RCW 49.17.120(5)(a).[11]

¶41 However, RCW 49.17.120(5)(a) does not address the duties of a general contractor regarding oversight of employees of subcontractors. As herein discussed, we decline here to extend the duties of general contractors, in regard to oversight of employees of subcontractors, to those arising from general provisions of WISHA itself. Thus, RCW 49.17.120(5)(a) may not relieve the Department of the burden of proving an element of its prima facie case.

¶42 The Department next contends that WRD 27.00 shifts the burden of proof regarding the elements of WAC 296-155-100(1) from the Department to J.E. Dunn. However, regardless of to whom WRD 27.00 purports to assign the burden of proof regarding those elements, WRD 27.00 was not promulgated pursuant to the rulemaking requirements of the Administrative Procedure Act (APA), chapter 34.05 RCW. It therefore lacks the force of law. Thus, it may not operate to J.E. Dunn's legal detriment by shifting the burden of proof regarding an element of an alleged WISHA regulation violation from the Department to J.E. Dunn.

¶43 The Department's authority to promulgate rules and policy statements pursuant to WISHA is governed by the requirements of the APA. RCW 49.17.040. An agency "rule" is defined by the APA, in part, as an

---

[11] RCW 49.17.120(5)(a)(iv) places on an employer the burden of establishing, as part of the affirmative defense of unpreventable employee misconduct, "[e]ffective enforcement of its safety program." That element is similar to the requirement of WAC 296-155-100(1) at issue here, i.e., the effective establishment, supervision, and enforcement of a safe and healthful working environment and accident prevention program.

agency order, directive, or regulation of general applicability . . . which *establishes, alters, or revokes any qualification or requirement relating to the enjoyment of benefits or privileges conferred by law*.

RCW 34.05.010(16) (emphasis added). Agency rules must be promulgated pursuant to the rulemaking requirements of the APA, which include publishing the proposed rule in the state register, giving notice of a public hearing, providing an explanatory statement, and maintaining a rulemaking file. RCW 34.05.320, .325; *Budget Rent A Car Corp. v. Dep't of Licensing*, 144 Wn.2d 889, 895, 31 P.3d 1174 (2001); *see also* RCW 49.17.040 (WISHA rulemaking requirements). "The purpose of rule-making procedures is to ensure that members of the public can participate meaningfully in the development of agency policies which affect them." *Hillis v. Dep't of Ecology*, 131 Wn.2d 373, 399, 932 P.2d 139 (1997).

¶44 A properly promulgated agency rule may revoke a "qualification or requirement relating to the enjoyment of benefits or privileges conferred by law." RCW 34.05.010(16). In other words, an agency rule may have the "force of law." *Manor v. Nestle Food Co.*, 131 Wn.2d 439, 445, 932 P.2d 628, 945 P.2d 1119 (1997) (quoting *Chrysler Corp. v. Brown*, 441 U.S. 281, 295, 99 S. Ct. 1705, 60 L. Ed. 2d 208 (1979)).

¶45 On the other hand, an agency "policy statement" is defined as

*a written description of the current approach of an agency . . . to implementation of a statute or other provision of law, of a court decision, or of an agency order*, including where appropriate the agency's current practice, procedure, or method of action based upon that approach.

RCW 34.05.010(15) (emphasis added). Agencies are encouraged to issue policy statements in order to advise the public of its opinions, approaches, and likely courses of action.

¶46 In contrast to agency rules, however, policy statements are "advisory only." RCW 34.05.230(1); *Simpson Inv. Co. v. Dep't of Revenue*, 141 Wn.2d 139, 161, 3 P.3d 741

(2000). As a result, policy statements may be issued without compliance with the formal rulemaking requirements of the APA. RCW 34.05.230(1). Because they are not promulgated pursuant to APA rulemaking requirements or other legislative delegation of authority, policy statements do not have the "force of law." *Joyce v. Dep't of Corr.*, 155 Wn.2d 306, 323, 119 P.3d 825 (2005); *State v. Brown*, 142 Wn.2d 57, 62, 11 P.3d 818 (2000); *accord Am. Hosp. Ass'n v. Bowen*, 266 U.S. App. D.C. 190, 834 F.2d 1037, 1046 (1987) (rules promulgated in compliance with rulemaking procedures of federal APA, 5 U.S.C. § 553, have the "force of law," while agency policies do not).

¶47 Accordingly, unlike rules, policy statements may not operate to revoke a qualification or requirement relating to the enjoyment of benefits or privileges conferred by law. RCW 34.05.010(16). When an agency improperly relies on an instrument lacking the force of law to have such an effect, the proper remedy is invalidation of the agency's action. *Hillis*, 131 Wn.2d at 399.

¶48 The Department's reliance on WRD 27.00 is premised on the assumption that WRD 27.00 may shift the burden of proof regarding the establishment of an element of a WISHA regulation violation from the Department to the employer. It may not. WRD 27.00 was not promulgated pursuant to the rulemaking requirements of the APA and is, at most, a statement of policy. A policy statement may not revoke a legal benefit conferred upon employers by WISHA, i.e., the requirement that the Department prove every element of its prima facie case. Thus, WRD 27.00 does not have the force of law and may not be applied to the detriment of the employer, J.E. Dunn.

¶49 When the Department alleges that an employer has violated a WISHA regulation, the law places on the Department the burden of establishing that the employer did not meet the requirements of the stated regulation. The Department may not simply disregard this legal directive by issuing a policy statement purporting to shift that burden of proof to the employer. Such a policy works to the

employer's legal detriment by revoking a benefit conferred by law, which only an instrument with legal force may do. *Joyce*, 155 Wn.2d at 324; *Brown*, 142 Wn.2d at 62. WRD 27.00 is not such an instrument.

¶50 The BIIA erred by placing on J.E. Dunn the burden of proving an element of the violations alleged in item 2 and item 3a. Accordingly, we reverse the BIIA's decision affirming those two citations and remand this matter to the BIIA for proceedings consistent with this opinion.

¶51 Affirmed in part, reversed in part, and remanded.

GROSSE and AGID, JJ., concur.

Reconsideration granted in part and opinion modified July 18, 2007.