[No. 62436-9-I.   Division One.   July 27, 2009.]

KATHLEEN HARDEE, *Appellant*, v. THE DEPARTMENT OF SOCIAL AND HEALTH SERVICES ET AL., *Respondents*.

*Carol Farr* (of *The Law Offices of Leonard W. Moen & Associates*), for appellant.

*Robert M. McKenna, Attorney General, Jay D. Geck, Deputy Solicitor General,* and *Patricia L. Allen, Assistant,* for respondents.

¶1 GROSSE, J. — Due process is satisfied by application of the preponderance of the evidence standard to the revocation of a home child care license, as provided by RCW 43.215.300(2). Here, the review judge's factual findings are supported by substantial evidence. The review judge correctly applied the law, and the factual findings support the review judge's legal conclusions. We affirm the decision to revoke Kathleen Hardee's home child care license.

## FACTS

¶2 Kathleen Hardee provided child day-care services in her home pursuant to a home child care license issued by the Department of Social and Health Services.[1] In July 2006, the Department of Early Learning (Department) received a referral from the King County Sheriff's Office reporting that Hardee's 19-year-old son, William, who lived with Hardee in her home, out of which she operated the day care, had been accused of having oral sex with a 3-year-old child he was babysitting. The child did not attend Hardee's day care, and the incident did not take place at the day care. William was charged with first degree rape of a child, pleaded guilty to first degree child molestation, and was incarcerated.

¶3 The Department summarily suspended Hardee's license the day it received the referral. On Hardee's motion, an administrative law judge (ALJ) stayed the suspension of the license pending a hearing.

¶4 The Department conducted an investigation after the July 2006 referral regarding the incident with Hardee's

---

[1] Since July 2006, the regulation of child care agencies has been conducted by the Department of Early Learning.

son. In November 2006, the Department revoked Hardee's license. The Department cited a number of incidents prior to July 2006 that showed the extent of William's mental and behavioral problems.[2] After William's conviction in 2001 of harassment, intimidation of a student, and fourth degree assault for threatening a person at school with a knife, Hardee agreed in writing to keep William off the premises during the hours the day-care center was in operation. In March 2003, Hardee signed a safety plan in which she agreed to never allow William to have unsupervised access to children. In October 2004, Hardee asked for a waiver of the regulation that would require William, because of his assault conviction, to be off the premises. Hardee assured the Department that William was never unsupervised when day-care children were present. The Department granted the waiver. The Department granted a second, similar waiver in April 2005, conditioned on William's always being supervised and never being left unattended with children in the day care.

¶5 In 2006, the Department determined that Hardee violated the conditions of the waivers and the safety agreement by allowing William to have unsupervised access to children in the day care. One parent arrived at the day care and found William changing his young daughter's diaper in a room with no other adult present. Another parent informed the Department that William was left alone with the children in the morning and afternoon while Hardee ran errands. The Department also claimed that persons were living in Hardee's home whom Hardee failed to report to the Department and who did not go through the required criminal background check. The final basis for the Department's decision to revoke Hardee's license was its conclu-

---

[2] For example, the Department cited allegations of domestic violence between William and Hardee, which Hardee denied. It also cited incidents at school, where William threatened to bring an AK-47 into school, made a blow torch out of hair spray and a lighter, and threatened to slit the throat of a teacher who refused to return William's rabbit foot. The Department also noted incidents where William abused the family cat, pointed an air gun at a young child's head, and showed a day-care child how to start a fire using an aerosol can.

sion that she operated her day care after her license had been summarily suspended in July 2006.

¶6 Hardee requested an administrative hearing on the license revocation. After the hearing, the ALJ issued an initial decision finding that Hardee's license should not be revoked and rescinding the Department's revocation. The Department petitioned for review of the initial decision.

¶7 The review judge issued a review decision and final order reversing the ALJ's initial order and revoking Hardee's license. The review judge concluded that the Department proved that Hardee violated the 2003 safety agreement and the terms of the 2004 waiver and allowed William to have unsupervised access to a child under her care. The review judge also concluded that the Department proved that Hardee lacks the personal characteristics an individual needs to provide care to children. The review judge concluded that the Department did not prove that Hardee had people living in her home who had not been cleared to be there, but that the Department did prove that she allowed "numerous unidentified people" to be in and around the children she had under her care "on a more or less regular basis." This was one basis for the review judge's conclusion that Hardee lacked the requisite characteristics to care for children.

¶8 Hardee petitioned for reconsideration of the final order. The review judge denied the petition for reconsideration. Hardee petitioned for review to the superior court. The superior court affirmed the review judge's decision and order, finding that the review judge correctly identified the errors in the ALJ's decision concerning evidence of licensing violations and that, but for such errors, the ALJ should have upheld the revocation of Hardee's license.

ANALYSIS

*Standards of Review*

¶9 Under the Administrative Procedure Act (APA), chapter 34.05 RCW, in reviewing an agency order in an

adjudicative proceeding, a court may grant relief from the order only if it determines that (1) the order, or the statute or rule on which the order is based, is unconstitutional on its face or as applied; (2) the order is outside the agency's statutory authority or jurisdiction; (3) the agency has engaged in an unlawful procedure or decision-making process or failed to file a prescribed procedure; (4) the agency erroneously interpreted or applied the law; (5) the order is not supported by substantial evidence when viewed in light of the whole record before the court; (6) the agency has not decided all issues requiring resolution by the agency; (7) a motion for disqualification was made and improperly denied; (8) the order is inconsistent with an agency rule; or (9) the order is arbitrary or capricious.[3] As the party asserting the invalidity of the final order, Hardee has the burden of demonstrating invalidity.[4]

¶10 We apply the standards of the APA directly to the administrative record, sitting in the same position as the superior court.[5] We review factual findings to determine whether they are supported by substantial evidence.[6] In reviewing factual findings under this provision, we will overturn an agency's factual findings only if they are clearly erroneous and we are " 'definitely and firmly convinced that a mistake has been made.' "[7]

---

[3] RCW 34.05.570(3).

[4] RCW 34.05.570(1)(a).

[5] *Montlake Cmty. Club v. Cent. Puget Sound Growth Mgmt. Hearings Bd.*, 110 Wn. App. 731, 733, 43 P.3d 57 (2002).

[6] RCW 34.05.570(3)(e).

[7] *Port of Seattle v. Pollution Control Hearings Bd.*, 151 Wn.2d 568, 588, 90 P.3d 659 (2004) (quoting *Buechel v. Dep't of Ecology*, 125 Wn.2d 196, 202, 884 P.2d 910 (1994)).

¶11 We review legal conclusions de novo to determine whether the review judge correctly applied the law, including whether the factual findings support the legal conclusions.[8]

¶12 "Constitutional challenges are questions of law subject to de novo review."[9] Statutes are presumed constitutional, and the party challenging the constitutionality of a statute has a heavy burden to establish that the statute is unconstitutional beyond question.[10] In order to declare a statute unconstitutional, the conflict between the statute and the constitution must be plain "beyond a reasonable doubt."[11]

*Review of Revocation*

¶13 By statute, in an adjudicative proceeding regarding the revocation of a license to operate a day care, the decision of the Department must be upheld if it is supported by a preponderance of the evidence.[12] Hardee argues that due process requires that review of a home child care license revocation be under the clear and convincing standard, not the preponderance of the evidence standard.

¶14 In arguing for the clear and convincing standard of review, Hardee relies on *Ongom v. Department of Health*[13] and *Bang D. Nguyen v. Department of Health, Medical Quality Assurance Commission*.[14] In *Ongom*, the court reversed the suspension of a nursing assistant's license where the agency relied on the preponderance of the evidence standard and held that the clear and convincing evidence standard applies. Similarly, in *Nguyen*, the court

---

[8] *Timberlane Mobile Home Park v. Human Rights Comm'n*, 122 Wn. App. 896, 900, 95 P.3d 1288 (2004).

[9] *Amunrud v. Bd. of Appeals*, 158 Wn.2d 208, 215, 143 P.3d 571 (2006).

[10] *Amunrud*, 158 Wn.2d at 215.

[11] *Island County v. State*, 135 Wn.2d 141, 146-47, 955 P.2d 377 (1998).

[12] RCW 43.215.300(2).

[13] 159 Wn.2d 132, 104 P.3d 1029 (2006).

[14] 144 Wn.2d 516, 29 P.3d 689 (2001).

reversed the revocation of a medical license because the agency revoked the license under the preponderance of the evidence standard. Neither *Ongom* nor *Nguyen* compel application of the clear and convincing evidence standard of review here. Both of those cases involved a professional license of a particular individual. Here, as the Department argues, the license issued to Hardee was in the nature of a site license, obtainable by the licensee's completion of 20 clock hours of basic training approved by the Washington State training and registry system.[15]

¶15 In her reply brief, Hardee argues that under *Chandler v. Office of Insurance Commissioner*,[16] the clear and convincing evidence standard should apply to the revocation of her license. *Chandler* involved the revocation of an insurance agent's license. The review judge applied both the preponderance of the evidence standard and the clear and convincing evidence standard. This court, without comment or analysis, stated that the review judge was correct in applying both standards. We are not prepared to extend the rule of *Ongom* and *Nguyen* to the revocation of Hardee's home child care license based on *Chandler*. The court's opinion on this issue in *Chandler* is not useful given the absence of analysis, and it is clear from the opinion that, regardless of the standard of review, revocation of the appellant's license was proper. As noted, the Department's argument that Hardee's license is more of a site license rather than an operator's license is well taken. Further, Hardee's license is more in the nature of an occupational license than a professional license. See *Brunson v. Pierce County*,[17] in which the court held that the preponderance of the evidence standard applied to the revocation of an erotic dancer's license. The court reasoned that an erotic dancer's license is an occupational license, not a "professional license" as that term is defined in chapter 18.118 RCW, which deals

---

[15] WAC 170-296-1410(5)(c).

[16] 141 Wn. App. 639, 173 P.3d 275 (2007).

[17] 149 Wn. App. 855, 205 P.3d 963 (2009).

with the regulation of businesses.[18] Accordingly, application of the preponderance of the evidence standard to the suspension of the license satisfied due process. We hold that the review judge correctly applied the standard to the revocation of Hardee's home child care license.

*Fair Hearing*

¶16 Hardee argues that the review judge, who is an employee of the Department, was biased against her because Hardee is an advocate for the unionization of day-care operators and trains day-care operators about the law and their rights. The Department argues that she failed to raise this claim below and cannot raise it on appeal. Hardee argues that by raising it in superior court, she adequately preserved it. However, under the APA, judicial review is limited to the agency record,[19] and the record does not show that Hardee raised this claim at the administrative level.[20] We conclude that Hardee failed to preserve this issue for review and note, further, that there is no evidence in the record to support Hardee's argument that the review judge was in any way biased against her.

¶17 Hardee also argues that only the ALJ was an impartial decision maker because the ALJ is not employed by the Department, while the review judge is. There is no support for the proposition that the fact that the review judge is employed by the Department, without more, means that the review judge is biased and that review should be of the ALJ's initial order, not the review judge's final order.

---

[18] Under that chapter, a "professional license" is "an individual, nontransferable authorization to carry on an activity based on qualifications which include: (a) Graduation from an accredited or approved program, and (b) acceptable performance on a qualifying examination or series of examinations." RCW 18.118.020(8).

[19] RCW 34.05.558. The court can take new evidence under the circumstances outlined in RCW 34.05.562, but those circumstances are not present here.

[20] Indeed, the declaration in which Hardee explains her union activities, and which she claims engendered bias on the part of the review judge, was submitted to the superior court in support of her petition for review, after the review judge issued the final order. There is no evidence that the review judge ever saw this declaration.

Indeed, the Supreme Court has held that there is no inherent unfairness in the combination of investigative and adjudicative functions, without more, that would run afoul of the appearance of fairness doctrine.[21] In her reply brief, Hardee argues that the review judge's statement that the ALJ disregarded evidence and failed to determine the credibility of witnesses shows the review judge's bias. This is not, however, a demonstration of bias, but rather an appropriate evaluation by the reviewing body of the decision under review. There is nothing in the record to suggest that the review judge was biased against Hardee simply because of the former's affiliation with the Department.

¶18 Next, Hardee argues that the review judge improperly ignored the ALJ's findings, improperly determined the credibility of witnesses, improperly weighed the evidence, and improperly reviewed the matter de novo. This, she argues, violates the appearance of fairness and her right to a fair hearing.

¶19 RCW 34.05.464(4) governs review by a review judge of an initial order and provides in part:

> The reviewing officer shall exercise all the decision-making power that the reviewing officer would have had to decide and enter the final order had the reviewing officer presided over the hearing, except to the extent that the issues subject to review are limited by a provision of law or by the reviewing officer upon notice to all the parties. In reviewing findings of fact by presiding officers, the reviewing officers shall give due regard to the presiding officer's opportunity to observe the witnesses.

Similarly, the Department's regulations provide that the "review judge has the same decision-making authority as an ALJ, but must consider the ALJ's opportunity to observe the witnesses."[22]

---

[21] *Wash. Med. Disciplinary Bd. v. Johnston*, 99 Wn.2d 466, 479, 663 P.2d 457 (1983).

[22] WAC 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(1). Hardee's argument that RCW 34.05.461(5) limits the Department's power to weigh evidence is without merit. The statute provides, "Where it bears on the issues presented, the agency's experience, technical

¶20 Despite these provisions giving the review judge the same decision-making authority as the ALJ, Hardee argues that the review judge had no authority to make credibility determinations or to weigh the evidence. The credibility issue pertains to the witness who testified about finding Hardee's son William changing the witness's daughter's diaper. The witness testified that it was not possible, given the layout of the house, for Hardee to have been able to observe William while he was changing the diaper; Hardee testified that William was always in her line of sight. The ALJ did not determine which witness's testimony was more credible. Accordingly, the review judge had no credibility determination to give "due regard to" under RCW 34.05-.464(4). Further, because the review judge has the same authority as the ALJ, it was proper for the review judge to make her own credibility determination, particularly because this issue was central to one of the Department's findings as to Hardee's license violations.

¶21 Even if, as Hardee argues, the ALJ's ruling in her favor amounted to an implicit credibility determination, the review judge had the authority to change this determination under RCW 34.05.464(4). The court in *Regan v. Department of Licensing*[23] held that a reviewing officer has the authority "to modify or replace an ALJ's findings, including findings of witness credibility," and stated that the statute does not require a reviewing judge to defer to the ALJ's credibility determinations, but rather authorizes the reviewing judge to make his or her own independent determinations based on the record.[24]

¶22 We reject Hardee's arguments that the review judge exceeded her authority and violated the appearance of fairness doctrine in reviewing the ALJ's decision. The

competency, and specialized knowledge may be used in the evaluation of evidence." First, the statute uses the term "may." Second, the issues in this case are not technical and require no specialized knowledge.

[23] 130 Wn. App. 39, 121 P.3d 731 (2005).

[24] *Regan*, 130 Wn. App. at 59.

review judge acted within the authority granted by RCW 34.05.464(4) and WAC 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(1).[25]

*Review Judge's Findings of Fact and Conclusions of Law*

A. ALJ's consideration of the evidence

¶23 Hardee attacks as unsupported the conclusion that the ALJ "failed to consider a significant portion of the evidence presented by the Department." This statement appears, as Hardee cites, at page 97 of the administrative record and is part of the Department's argument in its petition for review. It is not part of the review judge's opinion and cannot be the subject of an argument for reversal of the review judge's opinion.

B. Findings about William

¶24 Hardee argues that the review judge's findings that Hardee allowed her son William unsupervised access to children in the day care, in violation of the safety plan, is not supported by the evidence.[26] However, the record shows that a parent testified that, when he came to Hardee's house to pick up his daughter, he found William alone in the changing room, changing his daughter's diaper. Hardee disputed the parent's version of this event and testified that she had been changing the daughter's diaper but had to leave to see who was at the front door and asked William to stand by the baby to make sure she would not fall. She claimed she could see both William and the parent from her position in the hallway at all times. The ALJ did not resolve the dispute in the testimony. In finding the parent's version of events more

---

[25] We do not address Hardee's argument that the Department is equitably estopped from sanctioning her for one day of unlicensed day care. The review judge did not base her decision on Hardee's unlicensed operation of the day care. Nor do we address Hardee's argument that RCW 34.05.464(4) and WAC 170-03--0620(1) are unconstitutional. Hardee provides no authority in support of this argument. We do not address constitutional arguments unsupported by adequate briefing. *Havens v. C&D Plastics, Inc.*, 124 Wn.2d 158, 169, 876 P.2d 435 (1994).

[26] In the safety plan, Hardee agreed that William would never "be allowed any unsupervised contact with the child care children."

credible, the review judge noted the testimony in the record showing that, if Hardee was positioned in the hallway as she testified, she could not possibly have been able to see both the parent and William at the same time. Harriet Martin, who issued the license for Hardee's day care, testified that a Department investigator reported that "a couple of parents" saw William watching day-care children unsupervised while Hardee was not present or off the premises running errands. We will not disturb the review judge's credibility determination and findings about Hardee allowing William unsupervised access to day-care children because they are supported by substantial evidence.

### C. Unauthorized persons in the home

¶25 To the extent Hardee is arguing that one basis for the review judge's decision to revoke her license was the determination that Hardee allowed unauthorized persons to live in her house, her argument is unfounded. The review judge concluded that the Department failed to prove that Hardee had people living in her home whom the Department had not cleared to live there.

### D. Unlicensed day care

¶26 We do not address Hardee's argument that the Department is equitably estopped from revoking her license on the ground that she operated a day care without a license because the review judge did not base the decision to revoke Hardee's license on any unlicensed operation of the day care.

### E. Lack of necessary characteristics

¶27 The review judge concluded that Hardee lacks two of the characteristics required of persons providing care to children: "an understanding of how children develop socially, emotionally, physically, and intellectually" and "a disposition that is respectful of a child's need for caring

attention from a care giver."[27] The review judge based this conclusion on the facts that Hardee allowed William "extensive and intimate contact with the children under her care" and Hardee chose to allow "a steady stream of unidentified adults through her home during child care hours." We conclude that these findings are supported by substantial evidence in the record and support the review judge's conclusion.

¶28 We reject Hardee's claim that the review judge has no authority to revoke her license on a "vague claim of character." Possession of the requisite characteristics should be of the utmost importance in licensing a home child care provider. The review judge provided specific evidence to support the conclusion; the conclusion was not vague.

¶29 Hardee argues that because there is no rule banning visitors to the home of a child care provider during day-care hours, the fact that she had visitors is not a proper basis for a finding as to her character. But, the review judge did not base her conclusion as to Hardee's character on a rule banning visitors. Rather, the review judge concluded that the presence of numerous visitors during day-care hours compromised Hardee's ability to adequately supervise and care for the day-care children as well as her ability to supervise William. The testimony of several witnesses supports the finding that a number of other people, such as friends of Hardee's son and daughter-in-law as well as others, were in and around the house during day-care hours. While recognizing the potential for tension between a licensee's expectations about having visitors and entertaining family and friends and the licensee's obligation to comply with licensing requirements, the review judge concluded that Hardee's "allowing of all this traffic through her home casts doubt on whether she has an understanding of how children develop socially, emotionally, physically, and intellectually."

---

[27] Citing WAC 170-296-0140(2)(a), (f).

¶30 The review judge found Hardee's apparent lack of understanding of the seriousness of William's mental problems even more indicative of Hardee's lack of the requisite characteristics of a child care provider. Hardee's agreement to the safety plan shows at least some recognition on her part of the seriousness of William's problems. Yet, the evidence shows that she allowed William unsupervised access to the children and, after getting a waiver from the Department and after William's convictions, allowed William to play with the day-care children and help with clean-up activities. Given the evidence of William's behavioral problems, and particularly the fact that he was convicted of sexually assaulting a 3-year-old girl, the review judge did not err in finding that Hardee's allowing William access to the day-care children shows a lack of good judgment as to what is in the best interests of the children. This evidence also supports the review judge's determination that Hardee lacks an understanding of how children develop and lacks the characteristics necessary to provide child care. We will not disturb the review judge's determination.

¶31 We affirm the decision revoking Hardee's home child care license. Hardee is not entitled to attorney fees pursuant to RCW 4.84.350. Accordingly, we deny her request for an award of attorney fees.

DWYER, A.C.J., and ELLINGTON, J., concur.

Review granted at 168 Wn.2d 1006 (2010).