# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| PRO-ACTIVE HOME BUILDERS, INC., | No. 51047-2 |
| Appellant, | |
| v. | |
| WASHINGTON STATE DEPARTMENT OF LABOR AND INDUSTRIES, | UNPUBLISHED OPINION |
| Respondent. | |

LEE, A.C.J. – Pro-Active Home Builders, Inc. (Pro-Active) appeals seven citations issued by the Department of Labor and Industries (Department) for violations of the Washington Industrial Safety and Health Act of 1973 (WISHA), chapter 49.17 RCW. Pro-Active contends that substantial evidence does not support the Board of Industrial Insurance Appeals' (Board's) finding that Pro-Active had knowledge of the safety violations and the findings of fact do not support the Board's conclusion that Pro-active failed to prove the conduct was the result of unpreventable employee misconduct. We affirm.

## FACTS

A.    JOB SITE CITATIONS

Pro-Active installs siding and trim on new homes. Pro-Active contracted to install siding on two adjoining homes in Tumwater. The homes were two-story buildings that were over 10 feet high.

On January 13, 2014, one of Pro-Active's superintendents, John Hodges, visited the Tumwater site. Hodges observed a lead worker, Onofre Valadez Gomez, on the roof of one of the homes without safety equipment. He told Valadez to make sure he used his safety line to connect his harness to an anchor. Hodges considered this a verbal warning. Hodges then left Valadez in charge of safety at the site. Hodges testified that Pro-Active employees were trained in the proper use of scaffold and fall protections. Hodges also claimed the company held safety meetings and disciplined workers who violated safety protocol.

Later that day, Valadez constructed a scaffold that used a ladder as the walkway. Valadez was not trained in how to construct scaffold. The scaffold was potentially unstable and if it fell could cause death or serious injury.

While Valadez worked on the roof, Department inspector Raul De Leon arrived at the site and observed from his car Valadez walking on the roof without fall protection. Inspector De Leon also observed Valadez walk on the scaffold without fall protection. Valadez was in charge when De Leon visited the site. Pro Active admits that Valadez was exposed to fall hazards for not using a safety line while on the roof and while walking on the scaffold.

Inspector De Leon observed at the other home another employee, Martin Gonzalez Verdozco, on a scaffold that used a pump jack scaffold that was not secured to the ground with spikes. Gonzalez testified he erected the scaffold but could not recall if he used spikes. Inspector De Leon took pictures of the scaffold. Gonzalez testified that he could not see spikes in the pictures and that if there were spikes they would show in the picture. Gonzalez, who had worked for Pro-

2

Active for two years, testified he never observed Pro-Active discipline an employee for safety violations other than Valadez on January 13, 2014.

Pro-Active's owner, Chad Hansen, claimed Pro-Active did not approve of the scaffold that Valadez was standing on and always used spikes to secure the scaffold to the ground

The Department cited Pro-Active for the following seven WISHA violations:

1-1.    The employer did not ensure the employees exposed to fall hazards over 4 feet on steep pitched roofs used appropriate fall protection in violation of WAC 296-155-24609(07)(a).

1-2.    The employer did not ensure that scaffolds were erected only when the work is supervised and directed by a competent person AND done by experienced and trained employees selected by the competent person in violation of WAC 296-874-20004.

1-3.    The employer did not ensure that scaffolds were properly designed and constructed by a qualified person in violation of WAC 296-874-20002.

1-4.    The employer did not ensure that employees working from a scaffold platform were provided with appropriate safe access in violation of WAC 296-874-20020.

1-5.    The employer did not ensure that employees working from scaffold platforms at heights over 10 feet used appropriate personal fall arrest systems in violation of WAC 296-874-20052.

1-6.    The employer did not ensure that ladders used by employees on site, were used in accordance with manufacture's instructions and in a way they were designed for and intended to be used in violation of WAC 296-876-40005.

1-7.    The employer did not ensure that pump jack scaffolds used on site met the requirements of having the bottom part of the poles secured in violation of 296-874-40032.

All violations are characterized as "serious" violations. Board Record (BR) at 69-72.

B.      PRO-ACTIVE APPEALS TO THE BOARD

Pro-Active appealed to the Board, arguing that unpreventable employee misconduct excused its violations. The Board rejected Pro-Active's argument, deciding that Pro-Active did not prove that it took adequate steps to correct violations of its safety rules or enforced its safety program. The Board affirmed the citations.

C.      PRO-ACTIVE APPEALS TO THE SUPERIOR COURT

Pro-Active appealed to the superior court, which also rejected its unpreventable employee misconduct defense. The superior court, however, remanded for a further finding of fact regarding employer knowledge. On remand, the Board entered findings of fact and conclusions of law, specifically finding that "Pro-Active Home Builders, Inc. had constructive knowledge of all seven serious violations because it could have discovered or prevented them by exercising reasonable diligence." Clerk's Papers (CP) at 11. The Board further found:

> 18. Pro-Active Home Builders, Inc., failed to effectively enforce safety rules regarding fall protection and the construction and use of scaffolds on January 13, 2014.
>
> 19. Pro-Active Home Builders, Inc., did not take adequate steps to correct violations of its safety rules on January 13, 2014.
>
> 20. On January 13, 2014, Pro-Active Home Builders, Inc., did not effectively enforce its safety program.

CP at 12 The Board concluded "Pro-Active Home Builders, Inc., does not meet the requirements for vacating this Corrective Notice of Redetermination . . . based on unpreventable employee misconduct." CP at 13.

Pro-Active again appealed to the superior court, which affirmed the Board's order. Pro-Active now appeals to this court.

ANALYSIS

Pro-Active argues the Department failed to prove it had actual or constructive knowledge of the violations, and, even if the Department did prove knowledge, Pro-Active should not have been fined because the actions were based on unpreventable employee misconduct. We disagree.

A.    STANDARD OF REVIEW

Appeals from the Board are governed by the Administrative Procedure Act (APA), chapter 34.05 RCW. *Steven Klein, Inc. v. Dep't of Revenue*, 183 Wn.2d 889, 895, 357 P.3d 59 (2015). We review the Board's final order, rather than the superior court's decision, and we sit in the same position as the superior court. *Freeman v. Dep't of Soc. & Health Servs.*, 173 Wn. App. 729, 736, 738, 295 P.3d 294 (2013).

Under the APA, we review the Board's findings of fact for substantial evidence. *Id.* Evidence is substantial where it is sufficient to persuade a fair-minded, rational person of the finding's truth. *Raven v. Dep't of Soc. & Health Servs.*, 177 Wn.2d 804, 817, 306 P.3d 920 (2013). "We view the evidence and reasonable inferences in the light most favorable to the prevailing party—here, the Department." *Frank Coluccio Constr. Co. v. Dep't of Labor & Indus.*, 181 Wn. App. 25, 35, 329 P.3d 91 (2014). We review the Board's conclusions of law de novo to determine whether the Board correctly applied the law and whether the Board's findings of fact support its conclusions of law. RCW 34.05.570(3)(d); *Hardee v. Dep't of Health & Soc. Servs.*, 152 Wn. App. 48, 55, 215 P.3d 214 (2009).

B.    EMPLOYER KNOWLEDGE

Under WISHA, an employer has a general duty to employees to provide employees a place of employment free from recognized hazards that are causing or likely to cause serious injury or death and a specific duty to comply with the rules, regulations, and orders promulgated under WISHA. RCW 49.17.060(1), (2); *J.E. Dunn Nw., Inc. v. Dep't of Labor & Indus.*, 139 Wn. App. 35, 43-44, 156 P.3d 250 (2007). "RCW 49.17.180(2) mandates the assessment of a penalty against an employer when a proven violation is 'serious.' " *J.E. Dunn*, 139 Wn. App. at 44.

A "serious" violation of a WISHA regulation is defined as follows:

> [A] serious violation shall be deemed to exist in a workplace if there is a substantial probability that death or serious physical harm could result from a condition which exists, or from one or more practices, means, methods, operations, or processes which have been adopted or are in use in such workplace, unless the employer did not, and could not with the exercise of reasonable diligence, know of the presence of the violation.

RCW 49.17.180(6).

When alleging a violation of WISHA regulations against an employer, the Department bears the initial burden of proving the existence of that violation. WAC 263-12-115(2)(b); *J.E. Dunn*, 139 Wn. App. at 44. When an alleged violation is designated "serious," the Department bears the burden of proving not only the existence of the elements of the violation itself, but also the existence of those additional elements of a "serious" violation enumerated in RCW 49.17.180(6). *J.E. Dunn*, 139 Wn. App. at 44 (citing *SuperValu, Inc. v. Dep't of Labor & Indus.*, 158 Wn.2d 422, 433 n.7, 144 P.3d 1160 (2006)).

Accordingly, to establish its prima facie case in regard to a serious violation of a WISHA regulation, the Department must prove each of the following elements:

(1) the cited standard applies; (2) the requirements of the standard were not met; (3) employees were exposed to, or had access to, the violative condition; (4) the employer knew or, through the exercise of reasonable diligence, could have known of the violative condition; and (5) 'there is a substantial probability that death or serious physical harm could result' from the violative condition.

*Washington Cedar & Supply Co. v. Dep't of Labor & Indus.*, 119 Wn. App. 906, 914, 83 P.3d 1012 (2003) (quoting *D.A. Collins Constr. Co., Inc. v. Sec'y of Labor*, 117 F.3d 691, 694 (2nd Cir.1997), *review denied*, 152 Wn.2d 1003 (2004). Pro-Active challenges the knowledge element.

An employer's knowledge can be actual or constructive, and common knowledge can be used to establish that a hazard is recognized. *W. Oilfields Supply v. Washington State Dep't of Labor & Indus.*, 1 Wn. App. 2d 892, 903, 408 P.3d 711 (2017).

Here, the Board found "Pro-Active Home Builders, Inc. had constructive knowledge of all seven serious violations because it could have discovered or prevented them by exercising reasonable diligence." CP at 11. We, therefore, examine whether substantial evidence shows constructive knowledge.

In general, constructive knowledge is established where the employer in the "exercise of reasonable diligence" could have become aware of the condition. RCW 49.17.180(6). " 'Reasonable diligence involves several factors, including an employer's obligation to inspect the work area, to anticipate hazards to which employees may be exposed, and to take measures to prevent the occurrence.' " *Erection Co., Inc. v. Dep't of Labor & Indus.*, 160 Wn. App. 194, 206-07, 248 P.3d 1085 (quoting *Kokosing Constr. Co. v. Occupational Safety & Hazard Review*

*Comm'n*, 232 Fed. Appx. 510, 512 (6th Cir. 2007)), *review denied*, 171 Wn.2d 1033 (2011). Constructive knowledge may be demonstrated by the department in a number of ways, including evidence showing that the violative condition was readily observable or in a conspicuous location in the area of the employer's crews. *Erection Co., Inc.*, 160 Wn. App. at 207.

The record shows that Pro-Active's superintendent, Hodges, was onsite the day of the WISHA violations. Hodges observed Valadez on the roof without safety equipment and told Valadez to make sure he used his safety line to connect his harness to an anchor. Hodges then left Valadez in charge of safety at the job site. It was obvious that the job site required scaffolding since the houses were two-story building and over 10 feet high. Valadez was not trained in how to construct a scaffold, he constructed a scaffold that used a ladder as the walkway without fall protection. The scaffold was potentially unstable and if it fell could cause death or serious injury. Hodges acknowledged that Valadez did not correctly erect the scaffold. Inspector De Leon could see the safety violations from his car when he arrived at the jobsite.

At the other house located on the jobsite, Gonzalez constructed scaffolding that used a pump jack scaffold that was not secured to the ground with spikes. The missing spikes would be noticeable when looking at the scaffold.

Based on these facts, the violative conditions, as set forth in items 1-1 through 1-7 were readily observable or in a conspicuous location in the area of Pro-Active's crew. Pro-Active could have become aware of the conditions with the "exercise of reasonable diligence." RCW 49.17.180(6).

Pro-Active argues that there is no evidence to show that the condition existed for a sufficient period of time to be identified for Items 1-1 and 1-5 and that the Department double cited Pro-Active for Items 1-1 and 1-5. Item 1-1 relates to employees being exposed to fall hazards without fall protection and Item 1-5 relates to employees working from scaffold platforms at heights over 10 feet without using fall arrest systems.

First, Washington has not included duration as a required element to prove an employer's constructive knowledge; rather, we look to whether the violative condition was readily observable or in a conspicuous location. *Erection Co., Inc.*, 160 Wn. App. at 207. Focusing on duration may have the adverse effect of encouraging inspectors to leave workers in dangerous situations to prove a violation.

Second, Items 1-1 and 1-5 are not citations for the same violation. Item 1-1 relates to Valadez working on a roof without fall protection and Item 1-5 relates to him working on scaffold without fall protection. The exposure to fall hazards is in different locations.

Based on the above, substantial evidence supports the Board's finding that Pro-Active had constructive knowledge of all seven serious violations.

C.     UNPREVENTABLE EMPLOYEE MISCONDUCT

We next turn to whether Pro-Active established the affirmative defense of unpreventable employee misconduct. The Department may not issue a citation if unpreventable employee misconduct caused the violation. RCW 49.17.120(5)(a).

RCW 49.17.120(5)(a) establishes the requirements for the affirmative defense of unpreventable employee misconduct. To succeed on its claim, Pro-Active had to show (1) a

thorough safety program (including work rules, training, and equipment designed to prevent the violation), (2) adequate communication of these rules, (3) steps to discover and correct violations, and (4) effective enforcement of its safety program as written in practice and not just in theory. RCW 49.17.120(5); *W. Oilfields Supply*, 1 Wn. App. 2d at 906-07. In order to show that a safety program is effective in practice, the employer must prove that the employee's misconduct was an isolated occurrence and was not foreseeable. *Washington Cedar,* 119 Wn. App. at 913. This affirmative defense applies in "situations in which employees disobey safety rules despite the employer's diligent communication and enforcement." *Asplundh Tree Expert Co. v. Dep't of Labor & Indus.,* 145 Wn. App. 52, 62, 185 P.3d 646 (2008).

The Board found that Pro-Active did not adequately try to correct safety violations and that it did not effectively enforce its safety program. The Board concluded that Pro-Active did not meet its burden to show unpreventable employee misconduct. The Board did not err.

First, Pro-Active failed to show it tried to discover and correct safety violations. To prove unpreventable employee misconduct, the employer must show that the conduct was idiosyncratic and not foreseeable. *Washington Cedar*, 119 Wn. App. at 916. Here, the conduct was foreseeable because Hodges witnessed Valadez violating a safety rule that day. Despite seeing Valadez commit a safety violation, the superintendent left him in charge of safety and made no further attempt to monitor Valadez's compliance with safety rules.

Pro-Active argues that where an employee has just been reminded of the safety requirements, those safety standards are fresh in their mind and it would be foreseeable that the employee would be cognizant and abide by the rules. But, the opposite inference may also be

raised by knowledge that an employee is flouting safety rules and that the employee may require additional monitoring.

Also, the job site required scaffolding to work in the location where Valadez erected the scaffold. Hodges left Valadez at the house even though he was not competent in scaffold construction, and Hodges did not verify that a competent person would erect the scaffold. Further, there is no evidence that Hodges inspected the pump jack scaffold at the second house to look for safety violations, and he did not testify that the scaffold was properly secured.

Second, Pro-Active has provided no documentary evidence that it disciplined any employees for violating safety rules before the violations here. In *BD Roofing, Inc. v. Dep't of Labor & Indus.*, 139 Wn. App. 98, 113, 161 P.3d 387 (2007), there was no documentary evidence showing it disciplined its employees or implemented its written discipline policy, and the court held that the employer did not show its safety program was effective in practice. *Id.* Without showing actual enforcement of a company's disciplinary policy, the employer cannot meet its burden to show unpreventable employee misconduct. And the Board can rely on the lack of documented evidence to determine whether the program is effective in practice. *Id.*

Although Pro-Active claims it disciplined Valadez once verbally before the inspection, it did not verify by documentation that it disciplined any other Pro-Active employee. Gonzalez, who had worked for Pro-Active for two years, had never seen Pro-Active discipline an employee other than Valadez's on January 13, 2014. And Gonzalez had seen others working without fall protection.

11

No. 51047-2-II

Based on the above, substantial evidence supports the Board's findings that:

18. Pro-Active Home Builders, Inc., failed to effectively enforce safety rules regarding fall protection and the construction and use of scaffolds on January 13, 2014.

19. Pro-Active Home Builders, Inc., did not take adequate steps to correct violations of its safety rules on January 13, 2014.

20. On January 13, 2014, Pro-Active Home Builders, Inc., did not effectively enforce its safety program.

CP at 12. These findings of fact in turn support the Board's conclusion of law that "Pro-Active Home Builders, Inc., does not meet the requirements for vacating this Corrective Notice of Redetermination . . . based on unpreventable employee misconduct." CP at 13.

Accordingly, we affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____, A.C.J.
Lee, A.C.J.

We concur:

_____, J.
Bjorgen, J.

_____, J.
Melnick, J.

12